IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,        |
                                 |
            Plaintiff,           |
                                 |
VS.                              | No. 15-20091
                                 |
TERRENCE MILAM,                  |
                                 |
            Defendant.           |
_____


TRANSCRIPT OF SUPPRESSION HEARING

BEFORE THE

HON. U.S. MAGISTRATE CHARMIANE G. CLAXTON


FEBRUARY 29, 2016


MARK S. DODSON
OFFICIAL COURT REPORTER
167 N. MAIN STREET – SUITE 1125
MEMPHIS, TENNESSEE 38103


UNREDACTED TRANSCRIPT

2

1

2                         – A–P–P–E–A–R–A–N–C–E–S –

3

   For the Plaintiff:

4

                              DEBRA LYNN IRELAND
5                             ASSISTANT U.S. ATTORNEY
                              SUITE 800
6                             167 N. MAIN ST.
                              MEMPHIS, TN 38103
7

8  For the Defendant:

9                             NEEDUM LOUIS GERMANY, III
                              ASSISTANT FEDERAL DEFENDER
10                            200 JEFFERSON AVENUE, STE. 200
                              MEMPHIS, TN 38103
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              W I T N E S S   I N D E X

2        WITNESS                              PAGE LINE
       ---------------------------------------------------------
3
    ZACHARY APEL                                6    1
4      DIRECT EXAMINATION BY MS. IRELAND:       6   13
       CROSS-EXAMINATION BY MR. GERMANY:       18   16
5      REDIRECT EXAMINATION BY MS. IRELAND:    37   23

6

7

8              E X H I B I T   I N D E X

9        MARKED                               PAGE LINE
       ---------------------------------------------------------
10   Collective Exhibit 1                      11    2
     Exhibit 2                                 18   14
11   Exhibit 3 for ID                          47    1

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1
2                          FEBRUARY 29, 2016
3
4              THE COURT:  Good morning.
5              MS. IRELAND:  Good morning.
6              MR. GERMANY:  Good morning, Your Honor.
7              THE COURT:  We're here on the motion to
8    suppress in United States versus Milam.  Ready to proceed
9    this morning?
10             MS. IRELAND:  Yes, Your Honor.
11             MR. GERMANY:  We are ready, Judge.
12             THE COURT:  All right.  United States?
13             MS. IRELAND:  United States calls Officer
14   Zachary Apel.  And, Your Honor, for the record we would
15   also like to acknowledging Task Force Officer Clarita
16   Leake, who is a detective with the Memphis Police
17   Department and the case agent on this matter and ask that
18   she be allowed to remain at counsel table.
19             MR. GERMANY:  I don't object to that, Your
20   Honor.  At this time, I would request any written
21   documents that Officer Able would have prepared.
22             THE COURT:  All right.
23             MS. IRELAND:  Jencks material will be provided
24   at the conclusion of his testimony.
25             THE COURT:  All right.  We will do that.
```

UNREDACTED TRANSCRIPT

1          Would you please swear him in.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

1                          ***ZACHARY APEL,***

2    having been first duly sworn, took the witness stand and

3    testified as follows:

4              **THE COURT:**  Does anyone need to call the rule?

5              **MS. IRELAND:**  I don't believe there is anyone

6    else in the courtroom who is not either associated with

7    the case or the Court, Your Honor.

8              **THE COURT:**  All right.  Sure.  Come on up,

9    sir, I'm sorry.

10             **MS. IRELAND:**  May I proceed, Your Honor?

11             **THE COURT:**  You may.

12                      DIRECT EXAMINATION

13   **BY MS. IRELAND:**

14   *Q.*    Good morning, Officer.

15   *A.*    Good morning.

16   *Q.*    Would you please state your name and spell your

17   first and last name for the record?

18   *A.*    Zachary Apel, Z-A-C-H-A-R-Y; last name, A-P-E-L.

19   *Q.*    How are you employed?

20   *A.*    Memphis Police Department, Mt. Moriah Task Force.

21   *Q.*    How long have you been on board with the MPD?

22   *A.*    Six years.

23   *Q.*    And has the Mt. Moriah Task Force been your area of

24   responsibility the entire time?

25   *A.*    I've been on the task force for going on two and a

1   half, three years now.

2   Q.   What are the aims of that task force?

3   A.   We kind of work hand in hand with the General

4   Assignments Bureau.  We make attempt pickups, drug

5   interdictions, whatever our colonel needs us to do.

6   Q.   Do you ride in a patrol car?

7   A.   I do.

8   Q.   Do you ride with a partner or alone?

9   A.   Most of the time alone.

10  Q.   I'm going to turn your attention to January 21st of

11  2015.  Were you on duty that night?

12  A.   Yes, ma'am.

13  Q.   What was your assignment?

14  A.   I can't remember if I was working a ward, which

15  ward, but I believe it was 325s Ward in the area.

16  Q.   Do you know what shift you were working?

17  A.   Charlie shift.

18  Q.   What is Charlie shift?  What are the hours?

19  A.   2 p.m. to 10 p.m.

20  Q.   And is the Knight Road Elementary School in your

21  area of patrol?

22  A.   Yes.

23  Q.   Are you familiar with the Knight Road Elementary

24  School area?

25  A.   Very.

1    Q.    Do you patrol that area on a regular basis?

2    A.    I do.

3    Q.    All right.  Have you had occasion to see things

4    that may be inappropriate going on in that area?

5    A.    All the time.

6    Q.    Okay.  On the night of January 21st, do you recall

7    going to the Knight Road Elementary?

8    A.    I do.

9    Q.    Do you recall what time of day it was?

10   A.    It was after dark.

11   Q.    Okay.  And in January, just from your own personal

12   recollection, about what time does it tend to get dark in

13   January?

14   A.    Around 6 p.m.

15   Q.    Okay.  All right.  And can you please let the Court

16   know what you did on that evening of 21st of January in

17   2015?

18   A.    I pulled up behind the Knight Road Elementary

19   School.  I observed a black Tahoe parked in, backed up

20   behind one of the portable classrooms.  At that time I

21   pulled from the side of the building after I saw it and

22   pulled up in front of it, shined my spotlight in the

23   windshield and observed a male black and a young

24   juvenile.  It looked like they were struggling to pull

25   their pants up.  And at that time, I put my car in park

UNREDACTED TRANSCRIPT

1    and walked out, walked up to the driver's side, and I saw

2    the little girl continuing to fasten her pants.  And I

3    asked the adult male black sitting in the driver seat to

4    step out.  When he did, his pants started -- continued to

5    fall.  He fastened them, and I put him in handcuffs and

6    put him in the back of my squad car.

7    *Q.*    And why did you place him in handcuffs?

8    *A.*    I kind of figured what was going on at that point.

9    There was some sexual contact happening.  And I decided

10   to detain him for those reasons, indecent exposure and

11   the like, and I notified my lieutenant.

12   *Q.*    So you are familiar with the law in the State of

13   Tennessee?

14   *A.*    Yes.

15   *Q.*    And is it legal to be nude or partially nude in a

16   public place in the State of Tennessee?

17   *A.*    No, ma'am.

18   *Q.*    Is it legal to have sexual contact with a minor in

19   the State of Tennessee?

20   *A.*    No, ma'am.

21   *Q.*    Is it legal to have sexual interaction in a public

22   place in the State of Tennessee?

23   *A.*    No, ma'am.

24   *Q.*    Okay.  Now I'm going to go through step by step

25   with a little bit more detail.

1          **MS. IRELAND:** But first, if I could approach,

2    Your Honor?

3          **THE COURT:** You may.

4    BY MS. IRELAND:

5    Q.   Officer, I'm going to show you six images, if you

6    could look at those.

7          Do you recognize what's depicted in the images?

8    A.   Yes, ma'am.

9    Q.   What would it be?

10   A.   That's Knight Road Elementary.

11   Q.   Is it from a variety of viewpoints?

12   A.   It is from the front, the side and aerial view.

13   Q.   And there are six images here; is that correct?

14   A.   Yes, ma'am.

15   Q.   All right. Did you produce these images?

16   A.   I did not.

17   Q.   But to the best of your recollection, do they

18   fairly and accurately depict the way the Knight Road

19   Elementary area was on January 21st of 2015?

20   A.   Yes, ma'am.

21         **MS. IRELAND:** Your Honor, we would tender the

22   six images as Collective Exhibit Number 1.

23         **MR. GERMANY:** I don't have any objection, Your

24   Honor.

25         **THE COURT:** All right. Without objection,

1    that will be Collective Exhibit 1.

2              (Said items were marked as Collective Exhibit

3              1).

4         **MS. IRELAND:**  And then move those into

5    evidence, Your Honor?

6         **THE COURT:**  So moved.

7    **BY MS. IRELAND:**

8    *Q.*    Officer, what does this first image of Collective

9    Exhibit Number 1 show?

10   *A.*    That is the front view of the school taken from

11   Knight Road.

12   *Q.*    And Image Number 2?

13   *A.*    It's an image of Knight Road Elementary taken from

14   the -- it looks like the northeast corner of the school

15   from Knight Road.

16   *Q.*    So it would be a little further down the road then?

17   *A.*    Yes, ma'am.

18   *Q.*    Okay.  Image Number 3?

19   *A.*    About the same location, just a little further down

20   towards Knight Road towards Knight Arnold.

21   *Q.*    What is Image Number 4?

22   *A.*    An aerial view of the school.

23   *Q.*    I think I have that one upside down.  There we go.

24   And that's an aerial view?

25   *A.*    Yes, ma'am.

UNREDACTED TRANSCRIPT

1   *Q.*     The next, which would be the fifth of the six

2   images?

3   *A.*     It's an aerial view as well.

4   *Q.*     Is that a closer shot?

5   *A.*     It is.

6   *Q.*     And on the night of January 15th, was this area

7   behind the school largely open field and trees?

8   *A.*     Yes, and it still is today.

9   *Q.*     And then, finally, the sixth of the six images?

10  *A.*     A closer aerial view of the school.

11  *Q.*     All right.  I think the screen in front of you will

12  allow you to draw your finger across it and to point to

13  certain areas.

14  *A.*     Okay.

15  *Q.*     And then I believe there is a screen or a button

16  that allows you to zero that out if necessary.

17  *A.*     Okay.

18  *Q.*     So if you want to just give that a try, like maybe

19  in the upper corner, make an X see to see if it's

20  working?

21          There we go.  Okay, great.

22          Now, when you entered the parking lot of the

23  elementary school, can you show us on this Image Number 6

24  of Collective Exhibit Number 1 where you entered the

25  parking lot?

1    A.    This area right here (marking).

2    Q.    That's the area from Knight Road?

3    A.    Yes.

4    Q.    When you got on the property, could you tell if

5    this was any activity like a basketball game or something

6    going on?

7    A.    No, no, there was nothing going on.

8    Q.    So there were no lights on in the school?

9    A.    No, ma'am.

10   Q.    How about the parking lot, was it full of cars?

11   A.    No.

12   Q.    So the cars that are here in this picture, those

13   weren't there the night that you were on the location; is

14   that right?

15   A.    That's correct.

16   Q.    Okay.  Can you next draw an arrow or draw a line

17   indicating where you drove?

18   A.    Okay (marking).

19   Q.    Okay.  So the arrow indicates that you went through

20   the side parking lot and then followed a curved drive

21   around to the back parking lot; is that correct?

22   A.    That's correct.

23   Q.    Now in that back parking lot, there are what appear

24   to be two smaller or maybe portable buildings.  Are those

25   buildings still there?

1   A.    Yes.

2   Q.    Are there any other buildings?

3   A.    I believe there may be an additional one on the

4   back side here and may be one here.  I'm not a hundred

5   percent.

6   Q.    Could you show me where the Chevy -- it's a Tahoe

7   you described?

8   A.    Yes.

9   Q.    Where the Chevy Tahoe was parked?

10  A.    Well, that's a little left from what I intended,

11  but about right there (marking).

12  Q.    Okay.  Was there a car on either side of it?

13  A.    No.

14  Q.    Were there cars anywhere else in that lot?

15  A.    That was the only car on the entire property.

16  Q.    And you've indicated that there was a portable

17  building behind and to the further end of the parking lot

18  that's closer to what appear to be basketball courts in

19  the bottom left corner of this image; is that correct?

20  A.    That's correct.

21  Q.    All right.  Was the Tahoe backed up against a

22  building?

23  A.    I believe it was.  It was backed in that parking

24  spot where I indicated.

25  Q.    Is that another -- and another building was there

1    at that point?

2    *A.*    I believe there is another building.  Those

3    portables have come and gone over the years.

4    *Q.*    Do you have any recollection of perhaps how far

5    that vehicle would have been from the building?

6    *A.*    About 10 feet.

7    *Q.*    Okay.  And can you tell me where -- describe

8    verbally in relation to that Tahoe where you first

9    stopped your vehicle?

10   *A.*    I observed it up here when I first was able to gain

11   a view of the entire southern part of the portion of the

12   property.  I pulled in front of it, directly in front of

13   it.

14   *Q.*    Did you put the car in park when you pulled in

15   front of it?

16   *A.*    I did not.

17   *Q.*    Do you have a spotlight handy in your vehicle?

18   *A.*    I do.  It's attached to the patrol car.

19   *Q.*    And then you testified that you turned that on

20   quickly and shone it at the vehicle?

21   *A.*    I did just to see if anybody was inside of it.

22   *Q.*    If anyone was not inside of it, what would you have

23   done?

24   *A.*    I probably would have driven off.

25   *Q.*    Okay.  And then otherwise you've already described

*DIRECT - ZACHARY APEL*                                              16

1   what you saw that night?

2   A.   Ma'am?

3   Q.   So far -- and you've already described so far what

4   you saw that night and then what you did?

5   A.   Yes.

6            **MS. IRELAND:**  A question for the Court?  Is

7   there a way to capture --

8            **THE COURT:**  Yeah --

9            **MS. IRELAND:**  Sorry about that.

10           **THE COURT:**  -- as soon as you whipped that

11  off, I was going, oh, no.

12           Mr. Sowell, can you help them?

13           **MS. IRELAND:**  There we go.  Thank you.

14           **THE CLERK:**  It may or may not work, Judge.

15           **THE COURT:**  Well, we're going to cross our

16  fingers.

17           **MS. IRELAND:**  If all else fails, I can pull

18  out a cell phone and take a shot of the screen.

19           (Pause).

20           **THE CLERK:**  Very good.

21           **MS. IRELAND:**  Thank you.

22  **BY MS. IRELAND:**

23  Q.   Officer Able, did you write any reports regarding

24  the activities of the night of the 21st of January, 2015?

25  A.   I did.

1              **MS. IRELAND:**  May I approach?

2              **THE COURT:**  You may.

3              Officer, if you would like, if you would touch

4    the screen in that lower left-hand corner.  There you go.

5              **THE WITNESS:**  Okay.

6              **THE COURT:**  Thank you, sir.

7              **THE WITNESS:**  Yes, ma'am.

8    **BY MS. IRELAND:**

9    *Q.*    What is that?

10   *A.*    That's the narrative to my case notes.

11   *Q.*    Okay.  What's the purpose of writing case notes?

12   *A.*    We write in case notes on certain more sensitive

13   subjects to where it's the investigators are the only

14   ones that have access to the narrative.

15   *Q.*    And, if necessary, if you have to go to court, does

16   that help you recall the events of the evening?

17   *A.*    Yes, ma'am.

18   *Q.*    Did you look at this in preparation for your

19   testimony today?

20   *A.*    I did.

21   *Q.*    We will tender the report at Jencks material and

22   pass the witness.

23             **MR. GERMANY:**  Your Honor, if I could have a

24   second.

25             **THE COURT:**  Absolutely, I was going to say

1    take your time.

2              Ms. Ireland, did you want to do anything with

3    that screen shot?

4              **MS. IRELAND:**  I would like to move that in as

5    Exhibit Number 2, Your Honor.

6              **THE COURT:**  Did you want to show that to

7    Mr. Germany?

8              **MS. IRELAND:**  I certainly will.

9              **MR. GERMANY:**  No objection, Your Honor.

10             **MS. IRELAND:**  Thank you, Your Honor.

11             **THE COURT:**  Without objection, that will be

12   Exhibit 2.

13             (Said item was marked as Exhibit 2).

14                      CROSS−EXAMINATION

15   **BY MR. GERMANY:**

16   *Q.*   Good morning, Officer Apel, how are you this

17   morning?

18   *A.*   Good morning.  How are you?

19   *Q.*   I'm good.  So you were basically patrolling the

20   area of the Knight Arnold −− around the Knight Arnold

21   Elementary; is that right?

22   *A.*   Yes.

23   *Q.*   When all this was going −− I guess this was January

24   21st, 2015?

25   *A.*   Yes.

1    Q.    And so you decided to kind of patrol around the

2    school; is that right?

3    A.    I did.

4    Q.    As you were kind of making your way around the

5    school, you noticed the black Tahoe; is that right?

6    A.    Yes.

7    Q.    And you've already kind of marked where the Tahoe

8    was, but it was backed in to the portables; is that

9    right?

10   A.    Yes.

11   Q.    So on this picture you are looking at, looking from

12   left to right, do you see the basketball courts?

13   A.    I do.

14   Q.    Do you see the portables?

15   A.    I do.

16   Q.    And is it fair to say that the black Tahoe was on

17   the right-hand side of this parking lot in between the

18   basketball court and the portables?

19   A.    It was right there (indicating).

20   Q.    It would be backed into this side of the portable;

21   is that right?

22   A.    It's backed in right where I put that dot.

23   Q.    Okay.  And so you basically just kind of were on

24   routine patrol, and you see the car and you are

25   proceeding which direction?  When I'm saying which

1  direction, were you coming from the north, south, east,
2  west?
3  A.    I was coming from the north where your pen is at
4  and down to his vehicle.
5  Q.    Okay.  So the vehicle was south of you?
6  A.    The vehicle was right where I put that dot.
7  Q.    Okay.  So your vehicle, you stopped directly in
8  front of the vehicle, was that correct?
9  A.    I did.
10 Q.    And there would have been no way -- when you
11 stopped, there would have been no way for the vehicle to
12 pull forward; is that right?
13 A.    Negative.
14 Q.    And there would have been no way for it to really
15 back out because there is a building right there, right?
16 A.    Negative.
17 Q.    So you are agreeing?
18 A.    Yes.
19 Q.    Okay.  Is it fair to say that you shined the
20 spotlight and noticed two people in the car?
21 A.    Yes.
22 Q.    Is it fair to say that you stopped the vehicle, and
23 as you were exiting the car, that's when you noticed the
24 jostling around?
25 A.    No, I pulled up with my spotlight on.  I saw the

1   individuals struggling to get their pants, pull their

2   pants up, and at that point, I stopped the car, put it in

3   park and got out.

4   *Q.*    So your testimony today is that what -- you

5   actually observed the jostling around prior to you

6   stopping the vehicle?

7   *A.*    As I was coming to the front of the vehicle, I had

8   my spotlight on it, I saw the struggle.  At that point I

9   stopped my vehicle and got out and approached them.

10   *Q.*    Okay.  Now do you know what today's date is?

11   *A.*    It's the 29th.

12   *Q.*    February 29th, 2016?

13   *A.*    Yes.

14   *Q.*    And you would agree that June 5th, 2015 would have

15   been closer to January 21st, 2015?

16   *A.*    Yes.

17   *Q.*    And do you remember testifying at a preliminary

18   hearing in state court regarding this case?

19   *A.*    I believe so.

20   *Q.*    And isn't it true that your testimony on that day

21   was that you were on routine patrol, you saw a vehicle

22   behind the school backed in, that you shined the

23   spotlight, and you saw defendant and a girl in the front

24   seat, and isn't it true that on -- in June of last year,

25   that you stated it wasn't until you were exiting your car

1    that you noticed the jostling around?

2    *A.*    I don't believe so.

3            **MR. GERMANY:**  Your Honor, may I -- I have the

4    preliminary hearing.  I would ask for permission to play

5    that, if we could switch the output, Your Honor?

6            **MS. IRELAND:**  Your Honor, I haven't heard

7    this.

8            **MR. GERMANY:**  Your Honor, a preliminary

9    hearing is accessible to the government.  It is public.

10   It's easily accessible to them as much as it is to me.

11           **MS. IRELAND:**  I'm justing ask for an

12   opportunity to hear the exhibit that Mr. Germany intends

13   to offer.

14           **MR. GERMANY:**  I have a copy --

15           **MS. IRELAND:**  In addition, that is an

16   inappropriate method for impeachment.  He may be asked

17   about it.  If he denies it, he may be shown what's being

18   referred to and then given an opportunity to either

19   acknowledge that it is the same or not.

20           **THE COURT:**  Do you have a transcript?

21           **MS. IRELAND:**  It can't be entered as a

22   substantive exhibit.

23           **THE COURT:**  Do you have a transcript of the

24   testimony?

25           **MR. GERMANY:**  Pardon me, Your Honor?

1          **THE COURT:**  Do you have a transcript of the

2     testimony?

3          **MR. GERMANY:**  I don't have a transcript.

4          **THE COURT:**  Usually, when someone's

5     recollection is refreshed --

6          **MR. GERMANY:**  I was going to let you hear what

7     the officer says in regard to -- well, basically I'm

8     just -- I'm impeaching him.  I asked him what he said.

9     He said he doesn't believe he said it.  I would ask for

10    the opportunity to let him hear it, and therefore to

11    explain it.  It's completely proper.  This is within the

12    rules.  I don't understand what the government is

13    objecting about.  I've done this many, many times.

14         **MS. IRELAND:**  He may be given the opportunity

15    to listen to it, but it can't he entered into evidence

16    and be part of the record.

17         **MR. GERMANY:**  I'm not asking for it to be

18    entered at this point.

19         **MS. IRELAND:**  If you play it, it becomes part

20    of the hearing.

21         **MR. GERMANY:**  I can play it.  Are you

22    objecting to playing it right now?

23         **MS. IRELAND:**  Yes.

24         **MR. GERMANY:**  Okay.  Your Honor, I'm asking

25    for permission to play it so I can impeach the officer as

1    prior testimony at a preliminary.

2           **THE COURT:**  I understand prior testimony.  I

3    guess this is the first time I've had someone use prior

4    testimony to impeach but not have the transcript.  I'm

5    accustomed to someone having a transcript and offering

6    the transcript to the individual and either calling, you

7    know, page and line and saying, you know -- and reciting

8    the testimony.  And, you know, the opposing side has a

9    copy of the transcript, the witness has a copy of the

10   transcript or offered a copy of the transcript to review

11   and say does this refresh your recollection.  But I have

12   to say, this is, this is novel.

13          **MR. GERMANY:**  Your Honor, I've done this many,

14   many, many, many times in the district court.  I've done

15   it many, many times it seems to me in the magistrate

16   whenever I've had a hearing.  This is --

17          **THE COURT:**  First time you've done it for me.

18   Put it that way.

19          **MR. GERMANY:**  I mean he has testified in the

20   preliminary hearing.

21          **THE COURT:**  I'm not -- and I don't disagree

22   with you that that's what happened.  I think --

23          **MR. GERMANY:**  That's --

24          **THE COURT:**  -- the mechanism for showing it --

25   tell you what, as an offer of proof, we will play it.

1    And then just -- it's not in front of a jury.  It's in

2    front of me, and it will come under the category of what

3    it's worth.  I'll decide at some point as I'm drafting

4    the report and recommendation where I go with it.

5              **MR. GERMANY:**  I've just never had it objected

6    to.  I've always been able to play a tape that's prior

7    testimony.  I think the first I did it was with Judge

8    Donald about 15 years ago.  And basically I just -- that

9    was actually during a trial.

10             **MS. IRELAND:**  We reassert our objection.  15

11   years ago, case law changes, interpretation of rules

12   change, and it is inappropriate impeachment.  If the

13   officer had a chance to listen to it privately before and

14   then respond, that's one thing, but it's inappropriate to

15   make it part of the record.

16             **THE COURT:**  Like I said --

17             **MR. GERMANY:**  I don't have to give the officer

18   notice of what I'm planning to impeach him with.

19             **THE COURT:**  Hang on a second.  Again, I don't

20   think there is any disagreement about the ability to

21   impeach.  I think the disagreement is with the mechanism

22   you are using to impeach.  I believe that's the

23   objection.

24             **MS. IRELAND:**  That's correct, Your Honor.

25             **THE COURT:**  And, again, if you were offering a

1    transcript, no question, because he would have the

2    opportunity to review the transcript testimony, you would

3    hand it back.  He would say either it refreshes his

4    recollection or it doesn't.  If it didn't, then you would

5    publish it, but --

6         **MR. GERMANY:**  But, Your Honor, the thing about

7    it is, he can identify his voice from the preliminary

8    hearing.  He can listen to it just as he can read it and

9    then he can say -- then he can say, yes, I said it.  It's

10   the same exact thing.

11        **THE COURT:**  The distinction is that when you

12   hand him the transcript, I don't see it or hear it.

13        **MR. GERMANY:**  But what's the prejudice to the

14   government whether or not you hear it or not?  If it was

15   a transcript, you would eventually be able to read it.

16        **THE COURT:**  Not necessarily.  In other words,

17   if he says it refreshes his recollection, you hand it

18   back, and it would never come into evidence.

19        **MR. GERMANY:**  Well, I'm not moving to put it

20   into evidence.

21        **THE COURT:**  But I can't unhear it.

22        **MR. GERMANY:**  Well --

23        **THE COURT:**  I have an idea.  We can take a

24   break.  He can listen to it and determine if it refreshes

25   his recollection, and then we can come back in.

1           **MR. GERMANY:**  I think that's unnecessary, but

2    whatever Your Honor wants.

3           **THE COURT:**  I think it will accomplish what

4    you want to accomplish, and we will resolve the

5    government's objection, because if he says he doesn't

6    recognize it, I'll come back in once everybody has heard

7    it, you'll ask him does it refresh his recollection or

8    not; if he says it doesn't, I hear it, right?

9           **MR. GERMANY:**  That's fine, Your Honor.

10          **THE COURT:**  All right.  So I'll take how much

11   ever time y'all need me to take, and just let me know

12   when you want me back.

13          **THE CLERK:**  All rise.  This court now stands

14   in recess.

15          (Recess).

16          **THE COURT:**  So on the break, have you had an

17   opportunity to have the witness review the testimony?

18          **MR. GERMANY:**  Yes, Your Honor.  I'm ready to

19   proceed.

20          **THE COURT:**  And did it refresh his

21   recollection?

22          **MR. GERMANY:**  Pardon me?

23          **THE COURT:**  Did it refresh his recollection?

24          **MR. GERMANY:**  It did.  And may I continue?

25          **THE COURT:**  You may.

UNREDACTED TRANSCRIPT

1              **MR. GERMANY:**  Thank you, Judge.

2    **BY MR. GERMANY:**

3    *Q.*    Officer Apel, just backing up a little bit, when we

4    took a recess, isn't it true that we had gone back there

5    in the attorney meeting room and I played you a -- played

6    you the preliminary hearing from June of 2015 where you

7    testified at a preliminary hearing regarding this matter?

8    *A.*    Yes.

9    *Q.*    Were you able to refresh your recollection with

10   regard to your testimony on that day?

11   *A.*    Yes.

12   *Q.*    Okay.  Before we had we exited when we took a

13   recess, I had asked you whether or not you had testified

14   in the preliminary hearing that while you were on routine

15   patrol and patrolling behind the school, that after you

16   observed the black Tahoe pulled in, that you shined a

17   spotlight into the black Tahoe; is that right?

18   *A.*    Yes.

19   *Q.*    What I asked you before we left was; isn't it true

20   that you testified that as you were exiting -- that you

21   testified previously that -- in June of last year, as you

22   were exiting the squad car, that that's when you noticed

23   the movement, the wiggling around, and you said you

24   didn't recall testifying that way; is that right?

25   *A.*    Yes.

1   Q.     Now, that you've gone back and listened to the

2   preliminary hearing, does anything change regarding your

3   testimony?  I'm just asking you did you testify in June,

4   now that you've heard the tape, that you said that as you

5   were exiting the car, that's when you saw the wiggling

6   around, the movement?

7   A.     I did see it when I was exiting the vehicle.

8   Q.     But my question is:  Isn't it true that your

9   testimony, when you look at it as a whole, you said that

10  you saw the car pulled in, you shined the light; is that

11  right?

12  A.     Yeah.

13  Q.     And your testimony in June was that you saw them in

14  the front seat and then you went on to state:  As I was

15  exiting the car, that's when I saw them wiggling around

16  and moving?

17  A.     Yes.

18  Q.     That's what you testified in June?

19  A.     Yeah.

20  Q.     That's different than what you testified to here,

21  isn't that correct?

22  A.     I believe I was asked a little bit more detailed

23  description what happened versus a vague statement given,

24  and I was asked to recount the events of that night in a

25  whole --

1    Q.    When you say you were asked about more detail,

2    isn't it true basically they just said what happened that

3    night, isn't that what Ms. Ireland basically asked you?

4    And isn't that what the prosecutor in state court asked

5    you, can you just tell us what happened?

6    A.    Yes, sir, I can tell you exactly what happened.

7    When I shined the spotlight on the vehicle, I believe it

8    startled them --

9    Q.    That's not my question.  My question is:  You were

10   asked to give more detail, but isn't it true that both

11   prosecutors, in state court as well Ms. Ireland,

12   basically asked you the same thing:  Can you describe

13   what happened?

14         They both asked the same question; isn't that

15   right?

16   A.    Sure.

17   Q.    Now, your question -- your answer in June was

18   different than it was that you gave today, isn't it

19   correct?

20   A.    Sure.

21   Q.    It's important, Officer, because in June you will

22   admit that, again, it was -- you stated that it wasn't

23   until you were exiting your car that that's when you saw

24   the wiggling around?  That's what your testimony is?

25   A.    Sure.

1    *Q.*    Now, this wiggling around, that's what gave you the

2    reasonable suspicion to actually approach the door; isn't

3    that right?

4    *A.*    Yes.

5    *Q.*    I mean the wiggling around, you thought, you know,

6    you weren't sure --

7              **MS. IRELAND:**  Objection, argument, asked and

8    answered.

9              **MR. GERMANY:**  I was proceeding on, Your Honor.

10             **THE COURT:**  Repeat the question.  Rephrase.

11   Let's try that.

12             **MR. GERMANY:**  Yes, Your Honor.

13   **BY MR. GERMANY:**

14   *Q.*    Once you saw the wiggling around, that's what gave

15   you the reasonable suspicion to actually stop or to

16   actually go approach the car, right?

17   *A.*    When I saw the wiggling around, as soon as I put

18   the spotlight on the vehicle, I was still in motion, and

19   then they were wiggling.  When I stopped, they were

20   wiggling.  When I got out, they were wiggling.  When I

21   opened the door to the driver's side, they were wiggling.

22   *Q.*    But that's not what you testified in June; isn't

23   that right?

24   *A.*    I believe if I had been asked a little differently,

25   I may have said it that way.  Again, I vaguely gave a

1    recountment of what happened that night.

2              **MR. GERMANY:**  In light of that, Your Honor, in

3    light of -- to clear up the confusion, because he's

4    basically said I was asked a little bit different way,

5    you have every right and Mr. Milam has every right for

6    you to hear what's on the preliminary hearing.

7              **MS. IRELAND:**  Objection, Your Honor.  That's

8    not so.  He already admitted that he stated it in a

9    different fashion.  That's how you impeach a witness.

10             **MR. GERMANY:**  With all due respect to Ms.

11   Ireland, I know how to impeach a witness and I just did.

12             **THE COURT:**  Hang on a second.  And you are

13   right, you did.  In other words, you got him to admit the

14   testimony was different.

15             **MR. GERMANY:**  And I also got him to now say

16   that, well, he's asked a little bit different way.  So

17   now what are you going to do, Your Honor?

18             **THE COURT:**  Hang on a second.  The evidence is

19   the testimony, not the question.  What he said is:  When

20   asked last summer, what happened, he saw wiggling as he

21   was getting out of the car.  He's asked today to step by

22   step by step go through it.  And so, I mean, you went

23   through it both ways with him.  He doesn't disagree that

24   he said then he saw the wiggling as he was getting out of

25   the car.

1              **MR. GERMANY:**  In order for you to have a full

2    understanding of the gravity of his testimony, it is

3    incumbent upon you that you listen to the preliminary

4    hearing.  If you don't want to listen to it or if you are

5    not --

6              **THE COURT:**  No, again, it's not if I don't

7    want to listen to it.  It's --

8              **MR. GERMANY:**  You are not --

9              **THE COURT:**  It's how -- it's how do we

10   impeach, right, and how you get it in front of me.  And,

11   I'm not going to -- I've said it before, I'll say it

12   again, I'll never catch up to y'all in criminal

13   procedure, but I know rules of evidence, too.  I mean

14   civil or criminal rules of evidence remain the same.

15   And --

16             **MR. GERMANY:**  But the rules of evidence don't

17   apply in a suppression hearing, Your Honor.  And even if

18   it did, Your Honor, I've been in situations in trial

19   where courts have allowed the jury to hear preliminary

20   hearing transcripts, much less --

21             **THE COURT:**  I'm not saying there is anything

22   wrong -- you know what, I said it before, I'll say it

23   again, play it, and it will be under the category of for

24   what it's worth.  I'll take it into -- again, it's just

25   in front of me.  Your objection is on the record.  It's

1    duly noted.

2              **MS. IRELAND:**  An additional objection, Your

3    Honor, it does not become part of the transcript.  The

4    court reporter will not transcribe that hearing.  It will

5    not be part of the record.  But if Your Honor is going to

6    consider it, it needs to be.  And, furthermore, there are

7    other voices on that transcript that haven't been -- or

8    other voices on that recording that have not been

9    identified or acknowledged, and there is ancillary

10   material that is not pertinent to the suppression.

11             **MR. GERMANY:**  What ancillary material?  What

12   voices?  The prosecutor?  What ancillary material?  He's

13   testifying about this case.

14             **THE COURT:**  There is a disk, right?  Is there

15   a disk of the hearing?

16             **MR. GERMANY:**  Pardon me?

17             **THE COURT:**  Is there a disk of the recording?

18             **MR. GERMANY:**  There is.

19             **THE COURT:**  Just make it available to me.

20             **MR. GERMANY:**  I've given a copy to the

21   government.  I can provide a copy to Your Honor.  And if

22   Your Honor would -- I don't need to ask him anymore

23   questions.  I mean --

24             **THE COURT:**  You have.  I mean that's just it.

25   Again, I'm not sure what else you want to get out of him.

1    **MR. GERMANY:**  There really isn't anything

2    else, but what I would ask -- what I would ask to be

3    allowed to do is submit that into evidence, and if Your

4    Honor wants to consider it and you do a report and

5    recommendation, tell us in your report and recommendation

6    that you considered what's on the disk or not.

7         **THE COURT:**  Actually, you know --

8         **MR. GERMANY:**  Pardon me?

9         **THE COURT:**  I think I've got what I need from

10   his testimony.

11        **MR. GERMANY:**  Well, just for the record, I

12   would move to move that into evidence so Your Honor can

13   have the benefit of listening to it.  And if Your Honor

14   doesn't allow me to do that, I just want you to note --

15   want it noted for the record that I tried to get in the

16   prior testimony of the officer, and based on everything

17   that he has stated, based upon his lack of ability to

18   rectify the two testimonies saying that both the

19   questions were asked a different way trying to explain it

20   away, well, I mean it would be helpful, I believe, for

21   Your Honor to listen to it.  If Your Honor does not want

22   to listen to it or will not let me play the tape, I

23   understand Your Honor's ruling.  Just note my objection

24   for the record.

25        **THE COURT:**  Got it.

1                **MR. GERMANY:**  I'll move on, Your Honor.

2                **THE COURT:**  Okay.

3      **BY MR. GERMANY:**

4      *Q.*    Now, Officer Able, you stated that you were

5      approaching the vehicle from north to south, correct?

6      *A.*    Yes.

7      *Q.*    Now, we listened to the preliminary hearing back

8      there.  On another part of the preliminary hearing, isn't

9      it safe to say that in your testimony you said as you

10     were approaching the vehicle, the black Tahoe, you cut it

11     off; isn't that correct?

12     *A.*    When I decided to get out and once I saw what I saw

13     and put it in park and got out, the vehicle was cut off.

14     I mean it was not able to go backwards, otherwise it

15     would hit the curb, and it wouldn't have able to go

16     forward because it would hit my squad car.

17     *Q.*    As you were approaching the vehicle, you cut it

18     off?

19     *A.*    Yes.

20     *Q.*    And did you know you were going to cut it off?

21     *A.*    I did not.

22     *Q.*    That was only until you observed two people in the

23     vehicle; is that correct?

24     *A.*    When I saw the two people in the vehicle doing what

25     they were doing and being the time of the night that it

1    was and the school was closed and there was no activities

2    going on there, I suspected that what I was seeing was

3    sexual abuse of a child.

4    *Q.*     And it will be the last time I ask this question:

5    And you stated in June that as you exited the vehicle,

6    that's when you saw this jostling around; isn't that

7    correct?

8    *A.*     Like I said, I saw the jostling around when I was

9    pulling up, when I put the vehicle in park, when I got

10   out and when I opened the driver's side door.

11   *Q.*     But that's not what you said in June, correct?

12   *A.*     I believe I stated it differently in June.

13   *Q.*     June is a lot closer to January 21st than we are

14   today, correct?

15   *A.*     Yes.

16             **MR. GERMANY:**  Thank you.  That's all I have,

17   Judge.

18             **THE COURT:**  Any redirect?

19             **MS. IRELAND:**  Yes, Your Honor.

20                     REDIRECT EXAMINATION

21   **BY MS. IRELAND:**

22   *Q.*     Officer Apel, what is the nature of a preliminary

23   hearing in state court?  What's the purpose of it?

24   *A.*     The judge is going to recommend whether or not it

25   goes upstairs to criminal.

1    *Q.*    And do you customarily summarize events?

2    *A.*    Usually when you have to testify in general

3    sessions, you give a vague statement of what you did.

4    That's what you are usually asked.

5    *Q.*    Is that what you did in this particular case at the

6    preliminary hearing that's been referred to?

7    *A.*    I did.

8    *Q.*    And today you are giving additional detail in your

9    testimony; is that correct?

10           **MR. GERMANY:**  Your Honor, I ask the government

11   not be allowed to leave on redirect.

12           **THE COURT:**  Rephrase, please.

13   **BY MS. IRELAND:**

14   *Q.*    Are you giving more detail in your testimony today?

15   *A.*    Yes.

16   *Q.*    Why is that?

17   *A.*    Because I'm being asked to give more detail.

18   *Q.*    Okay.  When you, as defense counsel said, cut the

19   car off, had you already seen people in the vehicle?

20   *A.*    Yes.

21   *Q.*    And you've testified that you saw things, including

22   fussing with clothing, that led you to believe that a

23   crime had been committed?

24   *A.*    Yes.

25   *Q.*    And that's when you put the vehicle in park?

1    *A.*    Yes.

2              **MS. IRELAND:**  No further questions.

3              **THE COURT:**  Thank you, sir.  You can step

4    down.

5              **THE WITNESS:**  Thank you, Your Honor.

6              **THE COURT:**  Next witness.

7              (Witness excused).

8              **MS. IRELAND:**  Nothing further, Your Honor,

9    just argument.

10             **THE COURT:**  Mr. Germany?

11             **MR. GERMANY:**  No proof, Your Honor.

12             **THE COURT:**  Argument.

13             **MS. IRELAND:**  Your Honor, we wish to submit

14   this case based on the testimony of Officer Apel and

15   briefing that has already been filed in this matter.  The

16   officer has testified that he was on routine patrol, he

17   saw a vehicle, as he was pulling up to it, he shone his

18   spotlight.  He saw something that caused him concern.

19   Any number of state statutes may have been being violated

20   at that moment.  He put the car in park.  He walked over.

21   His suspicions were confirmed.  Mr. Milam's pants fell

22   down or started to fall down while he was getting out of

23   his vehicle.  His buttocks were partially exposed.  And

24   the child who appeared to be a child in the vehicle was

25   buckling her pants.

1            There is no unlawful detention here, however,

2     if the Court were to find so, that unlawful detention is

3     so de minimus, so brief, things happened practically

4     instantaneously, that there is no violation of rights

5     that would justify suppression, especially in light of

6     the interest of doing justice.  And as we note in our

7     brief, nothing was searched at the time.  There was a

8     search warrant obtained for the vehicle.  There was a

9     search warrant obtained for the device in the vehicle

10    where the evidence that forms the basis for the federal

11    charges was found.

12            So we do not believe this was an unlawful

13    detention.  Things happened quickly.  Things happened

14    almost simultaneously.  But the officer had reasonable

15    belief and then confirmed that belief and acted

16    appropriately in this case.

17            Again, if Your Honor determines otherwise, it

18    was so brief as to be di minimus and thus in the interest

19    of justice would not justify suppression, especially when

20    investigators further acted according to law and

21    respecting rights and privacy by getting, not one, but

22    two search warrants to get to the evidence.  So based on

23    all the foregoing, the testimony, the exhibits and the

24    briefing in the matter, we submit this to the Court with

25    the request that the evidence not be suppressed.

1          **THE COURT:**  Yes, sir.

2          **MR. GERMANY:**  Your Honor, may I approach?

3          **THE COURT:**  Sure.

4          **MR. GERMANY:**  Your Honor, I just passed up a

5    couple of cases I would like for Your Honor to review

6    before you issue a report and recommendation in this

7    case.

8          **THE COURT:**  All right.

9          **MR. GERMANY:**  The first case is United States

10   versus See.  The second case is United States versus

11   Gross.  I believe Gross relies on upon See.  This is a

12   very narrow issue in this case, Your Honor.  Basically

13   what the Sixth Circuit has held is that when an

14   individual is blocked in by police before police actually

15   observe anything that amounts to a reasonable suspicion,

16   then any evidence that would be gathered as a result of

17   this blocking in or hemming in, as those cases put it,

18   results in suppression of the evidence.  And I mean I

19   would agree with Ms. Ireland that after what happened in

20   the stop, I'm not disagreeing that, that if the officer

21   had actually observed this jostling around, that that

22   wouldn't have amounted to reasonable suspicion.  That's

23   why it's critical in this case that you look at the

24   testimony, what he's testified to in the past and what

25   he's testified to today, because it's different.

UNREDACTED TRANSCRIPT

1          Your Honor, it's different because in June of

2    last year, the officer testified and he admitted that

3    when he was asked by the prosecutor in that case what

4    happened, he testified that he saw the black Tahoe, he's

5    in the driveway, he pulls up, and it's very important in

6    this case because what he said is he observed two people

7    in the vehicle, and then as he was exiting the car, which

8    means his car was parked, which means that car was

9    blocked in, it means that if he was exiting his car and

10   that's when he noticed the jostling around and that's the

11   basis for the reasonable suspicion, then guess what?  You

12   have a Fourth Amendment violation, and it's clear as day.

13          If you are going to credit that testimony in

14   June, we win, no doubt about it based upon See and Gross.

15   There is no doubt because, if he's exiting his car and

16   that's when he sees what is suspicious, we win, because

17   you can't block in vehicles when you don't suspect

18   anything, any kind of criminal activity.  Maybe he had a

19   hunch there was something going on, but we know a hunch

20   is not enough.  So if you are going to credit his

21   testimony, which he stated in court that when he was

22   asked that question, what did you do, and he admitted as

23   he was exiting the car, that's when I noticed that they

24   were jostling around.  If the basis is jostling around

25   before the criminal activity for him to step out of the

1    car or even approach the car, then he has to observe the
2    criminal activity prior to parking his car right in front
3    of the vehicle and stopping its egress, which clearly it
4    was stopped.  There is no doubt he couldn't have backed
5    up.  There is no way he could have gone forward.  There
6    is no way.
7            So what are we left with?  We are left with a
8    credibility determination of two statements, one that was
9    said in June of last year, which is closer in time, or
10   one that was said today.  And he says, oh, I was asked
11   more details.  Well, he was asked basically the same
12   question, what happened.  And when he says, that's when I
13   noticed, when I was exiting the car, that's when I
14   noticed them jostling around, that's extremely important.
15   And if he wants to change his testimony today, why would
16   you credit it today when June is a lot closer in time?
17   And, you know, I mean this case, this case, based upon
18   See and Gross, is an absolute Fourth Amendment violation
19   of my client's rights, and I would ask that you suppress
20   all evidence -- I don't have any objection to what
21   happened after the stop.  Assuming the stop was good, Ms.
22   Ireland is correct, everything that happened thereafter,
23   I don't object to.  They got a warrant to look at the
24   phone.  They had a reasonable basis to get the phone.  I
25   got it.  Everything was almost done perfectly.  The only

1     thing the officer should have done in this case is he

2     should have kept driving by and before he parked that

3     car.  He can't just stop a car, stop his car right in

4     front of people.  You just can't do it.  Maybe you used

5     to be able to do it, but not now, because the law does

6     change, as Ms. Ireland pointed out, and those cases do

7     point out that -- they are pretty recent cases -- but I

8     believe that Gross talks about the importance, you know,

9     in this case, hey, look, you know, before See we -- maybe

10    these officers really wouldn't have had an opportunity to

11    know what the law is, but now the See case tells officers

12    you can't be blocking people in unless you observe

13    criminal activity.  And that's what he testified to in

14    June, and that's why, Your Honor, I'm asking you to

15    suppress the evidence.  That's all I have.

16              **THE COURT:**  Okay.  Get me -- is the disk only

17    of Officer Apel's testimony or like the whole hearing?

18              **MR. GERMANY:**  There are witnesses, there are

19    witnesses that testify after, but the first person who

20    testifies --

21              **THE COURT:**  I want you to get me a disk and

22    then tell me what time on the disk is the beginning and

23    end of what you want me to listen to.

24              **MR. GERMANY:**  Yes, Your Honor.

25              **THE COURT:**  And make a copy available to the

1    government.  I'll make note in my report and

2    recommendation how I treat it and what rules I treat it

3    under or don't treat it under.

4         **MS. IRELAND:**  If I may offer a suggestion,

5    Your Honor, may we have the excerpted testimony?  There

6    is also discussion between prosecutors as the courtrooms

7    are mic'd as ours are and pick up discussion between any

8    individual who is seated at the table.  I again renew our

9    objection, but if Your Honor is going to consider a

10   recording, it should be Officer Apel's testimony only.

11        **THE COURT:**  I just want to hear really just

12   the -- again, I want the audio version of what I would

13   get, which would be page and line, and so all I want is

14   the question and the answer or chunk thereof that is the

15   impeachment or the proffered impeachment of what was said

16   on the stand.  So whatever the government's question was

17   with regard to what did you see and whatever Officer

18   Apel's answer is.

19        **MR. GERMANY:**  I'm a little unclear.  I'm

20   sorry.  I'm not really following.

21        **THE COURT:**  So what I want -- you can give me

22   the disk of the whole thing, but when you send me a cover

23   letter, say, Your Honor, the impeaching testimony,

24   impeaching question and testimony will begin at 2 minutes

25   35 seconds and will end at 4 minutes 50 seconds.

UNREDACTED TRANSCRIPT

46

1      **MR. GERMANY:** Yes, Your Honor.

2      **THE COURT:** Does that make sense?

3      **MR. GERMANY:** Yes, Your Honor.

4      **THE COURT:** Does that make sense? Because --

5      **MS. IRELAND:** I would just renew the

6   government's objection.

7      **THE COURT:** So noted.

8      **MR. GERMANY:** I know where it is, and I mean I

9   can -- I guess I better go back and make sure and then

10   I'll submit it, Your Honor.

11      **THE COURT:** Like I said --

12      **MR. GERMANY:** Your Honor, could I submit the

13   disk right now into evidence and provide you a cover

14   letter, is that acceptable?

15      **THE COURT:** That's fine. I'm not going to

16   listen to it until I get the -- because I'm not going to

17   hear everything --

18      **MR. GERMANY:** I understand that.

19      **THE COURT:** -- and I don't want to --

20      **MR. GERMANY:** I am just figuring out how I

21   would electronically file this disk.

22      **THE COURT:** No, you just pass it up. That

23   would be 3 for ID, I guess.

24      (Said item was marked as Exhibit 3 for ID)

25      **MR. GERMANY:** I will provide a letter to the

UNREDACTED TRANSCRIPT

1  Court stating that, or I'll just style it supplemental

2  information --

3            **THE COURT:**  That will work.

4            **MR. GERMANY:**  -- regarding testimony of the

5  officer, and I'll just --

6            **THE COURT:**  File it, and then that way the

7  government will see it and they'll know.

8            **MR. GERMANY:**  Yes, Your Honor.

9            **MS. IRELAND:**  One final --

10            **MR. GERMANY:**  This is a very, very narrow

11  issue.

12            **MS. IRELAND:**  One final question, Your Honor.

13  I'm familiar with See and Gross.  I believe they are

14  distinguishable, and I know Your Honor has plenty of

15  resources and clerks, but if Your Honor wishes --

16            **THE COURT:**  If you all would like --

17            **MS. IRELAND:**  -- to follow on briefing, I

18  would be happy to provide it.

19            **THE COURT:**  You all have a week to brief me on

20  everything from my ability to listen to this and accept

21  it to the effect of See and Gross.

22            **MR. GERMANY:**  Yes, Your Honor.

23            **THE COURT:**  Okay.  So, in fact, when is your

24  trial date, April?

25            **MS. IRELAND:**  I believe it's April 4th right

1    now, Your Honor.

2            **THE COURT:**  Okay.  Then, yeah, you've got

3    until the 7th to submit whatever, whatever briefing you

4    have on this, and then -- because I want to try and get

5    this done by the 18th so y'all have time to do something

6    with it before trial.

7            **MR. GERMANY:**  Thank you, Your Honor.

8            **THE COURT:**  All right.  Thank y'all very much.

9            (Adjournment).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

1

2                        C E R T I F I C A T E

3          I, Mark S. Dodson, do hereby certify that the

4    foregoing 48 pages are, to the best of my knowledge, skill

5    and ability, a true and accurate transcript from my

6    stenotype notes in the matter of:

7

8    UNITED STATES

9    vs.

10   TERRENCE MILAM

11

12         Dated this 29th day of February, 2015.

13

14   S/**Mark S. Dodson**
     Official Court Reporter
15   United States District Court
     Western District of Tennessee
16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT