```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    Cr. No.  15-20091-SHM

TERRENCE MILAM,

        Defendant.

## POST HEARING MEMORANDUM

    Comes now the defendant, Terrence Milam, through appointed counsel, who files the following Post Hearing Memorandum and Supplement following Defendant's motion to suppress evidence.

### ADMISSIBILITY OF RECORDING

    On February 29, 2016, Magistrate Judge Charmiane G. Claxton presided over the hearing to determine whether the Court should suppress evidence as requested in Defendant's motion to suppress evidence.  At the hearing, the government called Officer Zachary Apel as a witness.  During cross examination, Undersigned attempted to impeach Office Apel with prior testimony that he gave at a preliminary hearing under oath in state court.  Judge Claxton briefly delayed the hearing so Officer Apel could listen to his prior testimony in private rather than simply allowing Undersigned to ask questions during cross examination.  After a brief delay to

1

allow for the above, Officer Apel did admit that his testimony differed but attempted to explain away the discrepancy.  Based on this, Undersigned renewed his request to submit the prior testimony on CD and/or play it in open court.  Ultimately, the Court did grant the defendant's request but limited itself as to what it would review after the hearing.  The specific portion that the Court said it would review revolved around Apel's testimony on direct exam at the preliminary hearing in state court as to his actions of spotting the defendant's vehicle and exiting his patrol car.  The Court requested that Undersigned delineate the exact time on the CD that was submitted in Court.  **For the record, 1:50 to 3:00 on the CD covers that testimony**.  Interestingly, the government has now chosen to unilaterally disregard the Court's instructions and include questions asked on cross examination during the state court preliminary hearing.  But the government just happened to omit testimony that positively indicates that Mr. Milam was blocked in prior to the officer observing anything illegal.

As a preliminary matter, as argued at the suppression hearing, the defendant submits that the entire audio recording of the preliminary hearing in state court should be admitted into evidence.  The defendant argues that the rules of evidence do not apply to a suppression hearing.

Federal Rule of Evidence 1101(d)(1) states that the rules of evidence do not apply to preliminary fact determinations to be made by the court under Rule 104. "Rule 104(a) provides that preliminary questions concerning admissibility are matters for the judge and that in performing this function he is not bound by the Rules of Evidence except those with respect to privileges." United States v. Matlock, 415 U.S. 164, 174, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Sixth Circuit has repeatedly held that hearsay is permissible at a sentencing hearing so long as it has some minimum indicia of reliability. United States v. Davis, 170 F.3d 617, 622 (6th Cir.), cert. denied, 528 U.S. 861, 120 S.Ct. 151, 145 L.Ed.2d 129 (1999); United States v. Polselli, 747 F.2d 356, 358 (6th Cir.1984), cert. denied, 469 U.S. 1196, 105 S.Ct. 979, 83 L.Ed.2d 981 (1985). Federal Rule of Evidence 1101(d)(3) provides that the rules of evidence are "inapplicable" to "miscellaneous proceedings," including sentencing hearings. Fed.R.Evid. 1101(d)(3). United States v. Richardson, 74 Fed.Appx. 565, 568 (6th Cir.2003). The Tenth Circuit has likewise specifically held the rules of evidence do not apply at suppression hearings. See United States v. Merritt, 695 F.2d 1263, 1270 (10th Cir.1982).

The defendant observes that the government's own admission of Officer Apel's notes at the hearing illustrates this rule. The defendant did not object to said admission because he is cognizant that arrest tickets, affidavits, prior transcribed testimony, audio

of sworn testimony, and audio of spontaneous recordings like dispatch calls are routinely admitted due to the relaxed nature of rules of evidence at suppression hearings.  The defendant cannot fathom how notes of an officer would be more reliable than sworn testimony before a state court judge.  Such a ruling by this Court would allow the government to have their cake and eat it too.

## STATEMENT OF FACTS

On direct exam, Officer Apel of the Memphis Police Department testified that he was traveling on Knight Road in Memphis, Tennessee.  Officer Apel stated that he observed Mr. Milam's vehicle backed into a parking spot at Knight Road Elementary.  Officer Apel pulled up to investigate and pulled directly in front of Mr. Milam's vehicle.  Apel stated that he observed the two occupants making furtive movements prior to parking his vehicle.  Officer Apel approached Mr. Milam's vehicle and ultimately detained Mr. Milam as the officer claimed to observe Mr. Milam with his pants down, and he believed foul play between Milam and the female passenger.

On cross exam, Apel admitted to testifying in June of 2015 in state court at a preliminary hearing.  During his testimony, Officer Apel described his encounter with Mr. Milam in a concise, step by step manner.  There was nothing vague about his testimony. There was nothing tricky or confusing about the question by the prosecutor.

4

Q. Will you spell your name for the court?

Q. Apel.

Q. Where are you employed?

A. Memphis Police Department Mt. Moriah Station Task Force.

Q. Were you so employed on January 21st of this year?

A. Yes I was.

Q. Did you were you on patrol that evening?

A.. Yes, I was.

Q. Did you notice something out of the ordinary?

A. Yes.

Q. Can you describe that for the court please?

A. I was on routine patrol Ward 325 East Prescient and was checking behind Knight Road Elementary behind there I noticed around 7:20 pm a black Tahoe backed in a parking spot *I went up to investigate the vehicle I shined my spotlight inside and I saw defendant Milam and a little girl in the front seat <u>as I was exiting my squad car I noticed that they were wiggling around</u> it looked to me like they were*

5

> ***trying to pull their pants up*** and at that time I approached the driver as I was talking to the driver asking him what he was doing I was noticing the little girl was buckling her belt and at that time I asked the defendant to step out of the vehicle I then noticed that he only had his pants sitting around his private area his buttocks was still exposed as I cuffed him I helped him pull his pants completely up and set him in the back of my squad car I then called for a supervisor to meet me on the scene and a couple of extra officers and the Lieutenant that made the scene contacted the appropriate bureaus.

As this Court can easily see, according to Apel's sworn testimony, he clearly observed the suspicious behavior(wiggling around), as he was getting out his car, meaning he had to have already blocked Milam's egress.

The government cites a latter portion of the transcript given by Apel on cross examination to demonstrate that Apel contradicted his testimony on direct. However, if the Court somehow credits that testimony, it must not discount the testimony given earlier on direct at 7:00 minute mark of the audio that clearly demonstrates

that Apel cut off(or blocked in) Milam previously to even shining the spotlight into Milam's vehicle.

> Q. So you're facing the vehicle it's about you say 15 yards away now are you, you said the vehicle was backed in and where your car was are you near the front near the door?
> A. The vehicle was facing west bound towards the field and the rear of the school I was also driving west bound as soon as I passed the last portable I looked to my left which is about 15 yards away that's where his car was and I was to the north of him I then turned south and cut his vehicle off and shinned my light in there.
> Q. Is there any artificial lighting back there behind the school?
> A. No just regular street lamps lights on the school.
> Q. Do you remember if the windows on the vehicle were tinted or not tinted?
> A. The side windows I can't recall the front windshield where I shined the spotlight was not.
> Q. So when you immediately pulled in front of

>the vehicle do you turn on your blue lights or do you just activate the flashlight?
>
>A. I just activated the spotlight at that point.
>
>Q. The spotlight?
>
>A. Yep.
>
>Q. And you're in front of directly in front of the vehicle?
>
>A. Yes directly in front.
>
>Q. You shined the light in and then what?
>
>A. At that point I see the defendant here and the little girl appear to be pulling up their pants they were doing a wiggling motion which was indicative of them pulling up their pants and at that point I exited the vehicle.
>
>Q. Did Mr Milam have on his shirt or
>
>A. Yes he had his shirt on.

Accordingly, Mr. Milam was blocked in to his spot prior to Apel observing anything illegal, amounting to a Fourth Amendment violation, as the law below demonstrates.

MEMORANDUM OF LAW AND ARGUMENT

I. Initial seizure and detention

The stop and search of the defendant was illegal and therefore the fruits gathered thereafter must be suppressed as a matter of law. In warrantless searches, the prosecution bears the burden of justifying the warrantless search. (Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed. 59, 64 (1951). Except where it is alleged that the defendant consented to the search, the prosecution must satisfy this burden of proof by a preponderance of the evidence. (United States v. Matlock, 415 U.S. 164, 39 L.Ed.2d 242, 253; United States v. Finefrock, 668 F.2d 1168, 1170.

The United States Supreme Court has specified that a warrantless search must be based on *individualized* suspicion. Chandler v. Miller (1997), 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513. A citizen may not be detained even "momentarily" without reasonable suspicion. United States v. Buchanon, *supra*, 72 F.3d at 1225-26. Once the point of detention is reached an officer "must have a reasonable articulable suspicion [of criminal activity], or else the stop and detention are illegal." United States v. Garcia, 866 F.2d 147, 150 (6th Cir. 1989). In order to conduct a Terry stop and search of defendant, the officers could only consider appellant's actions and the circumstances surrounding him alone. Id. See, also, United States v. Patterson, 340 F.3d 368, 372 (6th Cir., 2003). An investigative stop "must be justified by

9

some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." The totality of the circumstances must give the "detaining officers ... a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690 (1981). Cortez, quoting Chief Justice Warren's in Terry v. Ohio, *supra*, said that "[t]his demand for specificity in the information upon which police action is predicated is the *central teaching of this Court's Fourth Amendment's jurisprudence."  Id. (emphasis in* Cortez). See also United States v. Clardy, 819 F.2d 670, 673 (6th Cir. 1987).

The facts of the case at hand are controlled by Sixth Circuit precedent. The officer's own step by step description taken from direct examination in state court indicates that the officer blocked in Mr. Milam's vehicle and "was exiting his car" prior to witnessing anything illegal. This was a very specific, concise and detailed step by step description of the events of the night he arrested Mr. Milam. This testimony was given 8 months closer in time than that given at the suppression hearing before this Court. As such, there is absolutely no reason to distrust its accuracy. The government does argue that the officer's statement on cross examination contradicts his own words that he observed the wiggling around before exiting his vehicle but clearly on cross examination, he was not giving a step by step description of the events that

10

transpired.  However, on cross examination, Apel certainly made clear that prior to observing anything illegal, he cut off or blocked in Milam prior to observing anything illegal.  Under these facts, the officer's actions amounted to a warrantless Terry seizure without reasonable suspicion.  United States v. See, 574 F.3d 309, 313 (6th Cir.2009).  In See, as in the case at hand, an officer on patrol in a public parking lot noticed a car that was backed into a parking space in a dimly lit area. Id. at 311.  The officer in See, as in this case then pulled his patrol car in front of See's car and parked so that See could not move his vehicle. Id. at 312.  The Sixth Circuit held that "the blocking of See's car to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless Terry seizure ... [because] a reasonable person in See's position would not have felt free to leave." Id. at 313.  For these reasons, the defendant requests the same relief granted in See, as Apel's actions here were identical.

In the case at hand, the officer acted on a hunch that criminal activity was afoot prior to blocking in Mr. Milam, and the fruits from the initial stop must be suppressed.  See Wong Sun v. United States, 371 U.S. 471, 484-485, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963).  Also see, e.g., United States v. Gross, 662 F.3d 393, 401-07 (6th Cir.2011).

Gross is another example standing on all fours with the case at hand. In Gross, the defendant moved to suppress evidence because he was unlawfully detained after police officers blocked him in and approached the vehicle to ask questions. Id. The Sixth Circuit found that there was an insufficient justification for the Terry stop. Id. at 401. The Sixth Circuit also concluded that the evidence, a firearm, should have been suppressed as a fruit of the unlawful seizure. Id. at 406. The Court stated, , "where there is a stop with no legal purpose, the discovery of a warrant during that stop may be a relevant factor in the intervening circumstance analysis, but it is not by itself dispositive." Id. at 404. "To hold otherwise," the court reasoned,

> would create a rule that potentially allows for a new form of police investigation, whereby an officer patrolling a high crime area may, without consequence, illegally stop a group of residents where he has a "police hunch" that the residents may: 1) have outstanding warrants; or 2) be engaged in some activity that does not rise to a level of reasonable suspicion. Despite a lack of reasonable suspicion, a well-established constitutional requirement, the officer may then seize those individuals, ask for their identifying information (which the individuals will feel coerced into giving as they will have been seized and will not feel free to leave or end the encounter), run their names through a warrant database, and then proceed to arrest and search those individuals for whom a warrant appears. Under this scenario, an officer need no longer have reasonable suspicion o[r] probable cause, the very crux of our Fourth Amendment jurisprudence.

Id. at 404–05.

For all these reasons, the defendant requests that all evidence seized pursuant to Mr. Milam's illegal seizure be suppressed.

>Respectfully submitted,
>
>DORIS RANDLE-HOLT
>FEDERAL DEFENDER
>
>s/ NEEDUM L. GERMANY
>Assistant Federal Defender
>200 Jefferson Avenue, Suite 200
>Memphis, TN 38103
>(901) 544-3895

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Ms. Deb Ireland, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103.

This 7th day of March, 2016.

>s/ NEEDUM L. GERMANY
>Assistant Federal Defender