IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  Case 2:15-cr-20091-SHM

**TERRENCE MILAM,**

        Defendant.

---

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO SUPPRESS

---

Before the Court is Defendant Terrence Milam's Motion to Suppress. (Docket Entry "D.E." #36). The instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #38). The United States Magistrate Judge held an evidentiary hearing on February 29, 2016. For the reasons set forth herein, it is recommended that Defendant's Motion to Suppress be DENIED.

**I. Proposed Findings of Fact**

On January 21, 2015, Officer Zachary Apel ("Officer Apel") of the Mount Moriah Task Force of the Memphis Police Department ("MPD") was on routine patrol on the Charlie shift from 2:00 p.m. until 10:00 p.m. in the 325 Ward. (Transcript of February 29, 2016 Evidentiary Hearing ("Tr.") at 6-7, 18-19). Knight Arnold Elementary School ("School") is located within the 325 Ward, and Officer Apel is both familiar with the School and has seen "inappropriate" activity "going on in that area . . . all the time." (Tr. at 7-8).

1

On that date after dark, which Officer Apel states would have been after 6:00 p.m., he "pulled up" behind the School and "observed a black Tahoe parked in, backed up behind one of the portable classrooms." (Tr. at 8, 19). There were no other cars in the parking lot, no lights on at the school, and no indication of any activities going on at the school. (Tr. at 13-14).

At the February 29, 2016 evidentiary hearing, Officer Apel testified that he "pulled from the side of the building" after seeing the vehicle, "pulled up in front of it, shined [his] spotlight [that is attached to his patrol car] in the windshield and observed a male black and a young juvenile." (Tr. at 8, 15, 20-21). Officer Apel noticed that it "looked like they were struggling to pull their pants up." (Tr. at 8, 20-21). Officer Apel did not park his patrol car in front of the Tahoe at the time that he was initially checking the car with the spotlight, but he continued to park, exited his squad car, "walked up to the driver's side," and "saw the little girl continuing to fasten her pants." (Tr. at 8-9, 15, 20-21). He again clarifies that, as he "was coming to the front of the vehicle," he had his "spotlight on it," "saw the struggle," and then "stopped [his] vehicle and got out and approached them." (Tr. at 21).

After approaching the black Tahoe, he "asked the adult male black sitting in the driver's seat to step out." (Tr. at 9). "When he did, his pants started—continued to fall." (Tr. at 9). The man "fastened them," and Officer Apel "put him in handcuffs" in the back of his squad car. (Tr. at 9). Officer Apel stated that the reason for putting the man in handcuffs was because there was "sexual contact happening" involving a minor as well as "indecent exposure," both of which he knew to be in violation of Tennessee law. (Tr. at 9). Officer Apel then notified his lieutenant. (Tr. at 9).

Officer Apel had also previously testified at a preliminary hearing in state court regarding this case. (Tr. at 21 & Exh. 3). Officer Apel explained that the purpose of a preliminary hearing is

2

for a judge to "recommend whether or not it goes upstairs to criminal" from the general sessions court and that he is asked to give a "vague statement" of the incident at that proceeding. (Tr. at 37-38). At the preliminary hearing, Officer Apel testified as to what he did when he observed Defendant's vehicle in the School parking lot:

> I went up to investigate the vehicle, shined my spotlight inside, and I saw Defendant Milam and a little girl in the front seat. As I was exiting my squad car, I noticed that they were wiggling around, looked to me like they were trying to pull their pants up, and uh, at that time I approached the driver.

(Tr. at Exh. 3 at 2:38). When asked on cross-examination to provide further details regarding his interaction with Defendant, Officer Apel stated that, upon seeing Defendant's vehicle parked in the lot, he immediately "cut [the Defendant's] vehicle off" and shined his spotlight at the vehicle. (*Id*. at 7:40, 8:20). On cross-examination, Officer Apel again described the interaction as follows:

> At that point, I see the Defendant here and the little girl appear to be pulling up their pants. They were doing a wiggling motion . . . indicative of them pulling up their pants. At that point, I exited the vehicle.

(*Id*. at 8:38).

When asked at the evidentiary hearing in the instant case about his prior testimony at the preliminary hearing, Officer Apel opined that he was asked in this Court to provide a "more detailed description of what happened." (Tr. at 29, 38). Officer Apel clarified the alleged inconsistencies as follows:

> When I saw the wiggling around, as soon as I put the spotlight on the vehicle, I was still in motion and then they were wiggling. When I got out, they were wiggling. When I opened the door to the driver's side, they were wiggling.

(Tr. at 31). Officer Apel further stated that he only "decided to get out once [he] saw what [he] saw" and, then, he parked his squad car and "cut off" Defendant's vehicle. (Tr. at 36-37). Officer Apel testified that he "cut . . . off" Defendant's vehicle only after he had seen the individuals in the

3

vehicle "fussing with clothing" that led him to believe a crime had been or was in the process of being committed. (Tr. at 9, 38-39).

**II. Proposed Conclusions of Law**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment applies to government intrusions when the person has a reasonable expectation of privacy. *Soldal v. Cook County, Illinois*, 506. U.S. 56, 69 (1992); *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978). When the protections of the Fourth Amendment apply, a warrant is generally required unless an exception to the warrant requirement applies. *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *United States v. McLevain*, 310 F.3d 434, 438 (6th Cir. 2002)).

In determining whether the Fourth Amendment's protections are implicated, the Court must look to the nature of the encounter between law enforcement and the individual. *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000) (quoting *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (internal citations omitted)). There are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *Id*.

During a consensual encounter, "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe

4

that the person was not free to leave." *Waldon*, 206 F.3d at 603. "Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not any subjective suspicion of criminal activity." *Id*. A consensual encounter does not implicate the Fourth Amendment's protections, as it does not constitute a "seizure" or "search" to "approach[] an individual and ask a few questions." *Florida v. Bostick*, 501 U.S. 434, 434 (1991).

An encounter escalates to a seizure and implicates the Fourth Amendment "when a reasonable person, in view of the circumstances surrounding the encounter with law enforcement officials, believes he is not free to leave." *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). A request that the person stay at the location or a request for and retention of the person's property has been held to implicate the Fourth Amendment. *Winfrey*, 915 F.2d at 216; *see also Florida v. Royer*, 460 U.S. 491, 501-502 (1983).

"A temporary seizure under the Fourth Amendment may be justifiable if a reasonable articulable suspicion of criminal activity actually exists." *Winfrey*, 915 F.2d at 216 (quoting *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968)). Such an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Winfrey*, 915 F.2d at 216 (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Similarly, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id*. The reasonableness of an investigation, then, is a dual inquiry: (1) whether the officers' conduct is supported by articulable suspicion; and, (2) whether the detention and investigative methods used were reasonable under the circumstances. *Winfrey*, 915 F.2d at 216 (citing cases). The government bears the burden of showing the seizure based on reasonable

suspicion satisfied the conditions of an investigative *Terry* seizure.

An arrest must be supported by probable cause, which must be determined under the totality-of-the-circumstances approach. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). There is no bright-line test for determining when an arrest occurs. *United States v. Lopez-Arias*, 344 F.3d 623, 627-28 (6th Cir. 2003). The analysis of the conditions and circumstances that rise to the level of arrest is a fact-sensitive inquiry. *Id.* In making this determination, a court shall consider a variety of factors, including, but not limited to: (1) movement or transportation of the detainee from the site of the initial stop or detention to another location; (2) the nature and extent of the imposition of restraint or limitation on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of Miranda warnings. *Id.* However, no single factor is ultimately dispositive of this issue, and the court must look toward the whole of the events in question.

The crux of the instant case is whether a proper investigative detention was performed based upon reasonable, articulable suspicion of criminal activity. Officer Apel testified that he utilized his spotlight and observed Defendant and a minor female who appeared to be involved in sexual activity. He testified multiple times at this hearing and on cross-examination at the preliminary hearing that he made these observations before he parked in front of Defendant's vehicle, thereby blocking him into his parking space. While Officer Apel did also testify at the preliminary hearing that, as he was exiting his squad car, he noticed the occupants "wiggling around," Officer Apel clarified at the evidentiary hearing that he observed the occupants wiggling around at the time he shined the spotlight on them while he was still driving, that he observed them wiggling around when he parked and exited his car, and that he observed them wiggling around when he approached the

car and even as he removed Defendant from the vehicle. The Court believes this would be consistent with the behavior of individuals who are in the process of getting dressed as soon as they were surprised by Officer Apel's presence.

Defendant relies upon *United States v. Gross*, 662 F.3d 393 (6th Cir. 2011), and *United States v. See*, 574 F.3d 309 (6th Cir. 2009), for his position that the Fourth Amendment was violated. Both cases hold that blocking an automobile in a parking lot with an officer's parked car without the officer having first obtained reasonable, articulable suspicion that criminal activity was afoot violates the Fourth Amendment. However, the instant case is distinguishable because the Court recommends that Officer Apel did in fact have reasonable, articulable suspicion when he observed Defendant and a minor female in the School parking lot after dark, with no indication of school activities underway, and witnessed them attempting to pull their pants back up as if they had been involved in sexual activity when they noticed his presence.

Ultimately, based upon Officer Apel's observations, the Court recommends that he had reasonable suspicion to believe a violation of Tennessee law had been committed or was in the process of being committed. Thus, the Court recommends that Officer Apel performed a proper investigative detention that eventually resulted in Defendant's arrest. Accordingly, it is recommended that no violation of the Fourth Amendment occurred.

Further, even if this Court were to recommend that a constitutional violation occurred, which it does not, the Supreme Court recently considered in *Herring v. United States*, 555 U.S. 135, 144 (2009), whether the violation rises to a level to warrant suppression of evidence. The Supreme Court stated that a Fourth Amendment violation alone does not necessarily mean that the exclusionary rule applies. *Id.* at 140. The Court stated that exclusion has always been the last

7

resort, not the first impulse. *Id.* at 141. Ultimately, the Court held that, to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*.

In the instant case, even if the Court were to accredit the portion of Officer Apel's preliminary hearing testimony in which he mentions seeing what he believed to be sexual activity *after* exiting his vehicle over the portions of Officer Apel's testimony in which he references seeing what he believed to be sexual activity *before* exiting his vehicle, the momentary parking of his car in front of Defendant's vehicle can only be said to constitute a *de minimis* detention before he approached the vehicle and confirmed that Defendant and the minor victim were in fact struggling to put on their pants. Accordingly, the Court recommends that, even if the District Court were to conclude that any constitutional violation occurred, that suppression is not the appropriate remedy under the Fourth Amendment.

## III. Conclusion

For the reasons set forth herein, it is recommended that Defendant's Motion to Suppress be DENIED.

**IT IS SO ORDERED** this 18th day of March, 2016.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE