**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Cr. No. 15-20091-SHM** |
| **TERRENCE MILAM,** | * | |
| **Defendant.** | * | |

## OBJECTIONS TO MAGISTRATE COURT'S REPORT AND RECOMMENDATION

COMES DEFENDANT, Terrence Milam, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, and hereby objects to the Report and Recommendation on Defendant's Motion to Suppress filed with this Court.  Defendant hereby incorporates the previously filed motion to suppress and post-hearing memorandum with this filing, and would state and show to this Court that the defendant's constitutional rights were violated and that the evidence seized from the illegal search should be suppressed.

## APPLICABLE LAW AND ANALYSIS

A. Admissibility of Recording

On February 29, 2016, Magistrate Judge Charmiane G. Claxton presided over the hearing to determine whether the Court should suppress evidence as requested in Defendant's motion to suppress evidence.  At the hearing, the government called Officer Zachary Apel as a witness.  During cross examination, Undersigned attempted to impeach Office Apel with prior testimony that he gave

1

at a preliminary hearing under oath in state court.  Judge Claxton briefly delayed the hearing so Officer Apel could listen to his prior testimony in private rather than simply allowing Undersigned to ask questions during cross examination.  After a brief delay to allow for the above, Officer Apel did admit that his testimony differed but attempted to explain away the discrepancy.  Based on this, Undersigned renewed his request to submit the prior testimony on CD and/or play it in open court. Ultimately, the Court did grant the defendant's request but limited itself as to what it would review after the hearing.  The specific portion that the Court said it would review revolved around Apel's testimony on direct exam at the preliminary hearing in state court as to his actions of spotting the defendant's vehicle and exiting his patrol car.  The Court requested that Undersigned delineate the exact time on the CD that was submitted in Court.  For the record, 1:50 to 3:00 on the CD covers that testimony.  Interestingly, the government chose to unilaterally disregard the Court's instructions and include questions asked on cross examination during the state court preliminary hearing in its post hearing memorandum.  But the government just happened to omit testimony that positively indicates that Mr. Milam was blocked in prior to the officer observing anything illegal.

As a preliminary matter, as argued at the suppression hearing and post hearing memorandum, the entire audio recording of the preliminary hearing in state court should have been admitted into evidence because the rules of evidence do not apply to a suppression hearing.  This was never done. Instead it was merely marked for identification making review by the Sixth Circuit impossible.

Federal Rule of Evidence 1101(d)(1) states that the rules of evidence do not apply to preliminary fact determinations to be made by the court under Rule 104. "Rule 104(a) provides that preliminary questions concerning admissibility are matters for the judge and that in performing this function he is not bound by the Rules of Evidence except those with respect to privileges." United

States v. Matlock, 415 U.S. 164, 174, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

The Sixth Circuit has repeatedly held that hearsay is permissible at a sentencing hearing so long as it has some minimum indicia of reliability. United States v. Davis, 170 F.3d 617, 622 (6th Cir.), cert. denied, 528 U.S. 861, 120 S.Ct. 151, 145 L.Ed.2d 129 (1999); United States v. Polselli, 747 F.2d 356, 358 (6th Cir.1984), cert. denied, 469 U.S. 1196, 105 S.Ct. 979, 83 L.Ed.2d 981 (1985). Federal Rule of Evidence 1101(d)(3) provides that the rules of evidence are "inapplicable" to "miscellaneous proceedings," including sentencing hearings. Fed.R.Evid. 1101(d)(3).   United States v. Richardson, 74 Fed.Appx. 565, 568 (6th Cir.2003).   The Tenth Circuit has likewise specifically held the rules of evidence do not apply at suppression hearings. See United States v. Merritt, 695 F.2d 1263, 1270 (10th Cir.1982).

The defendant observes that the government's own admission of Officer Apel's notes at the hearing illustrates this rule.  The defendant did not object to said admission because he is cognizant that arrest tickets, affidavits, prior transcribed testimony, audio of sworn testimony, and audio of spontaneous recordings like dispatch calls are routinely admitted due to the relaxed nature of the rules of evidence at suppression hearings.  The defendant cannot fathom how notes of an officer would be more reliable than sworn testimony before a state court judge.  Such a ruling by this Court would allow the government to have their cake and eat it too.

In her Report and Recommendation, Judge Claxton never ruled on the admissibility of the audio from the preliminary hearing, although she did refer to portions of it in her ruling.  For these reasons, the defendant requests a *de novo* hearing.  This will allow Undersigned to be able to properly question Officer Apel regarding the entirety of the audio.  More importantly, this will aid this Court in assessing the credibility of Apel regarding his prior sworn testimony.

<u>OBJECTIONS TO FINDINGS OF FACT</u>

On direct exam, Officer Apel of the Memphis Police Department testified that he was traveling on Knight Road in Memphis, Tennessee.  Officer Apel stated that he observed Mr. Milam's vehicle backed into a parking spot at Knight Road Elementary.  Officer Apel pulled up to investigate and pulled directly in front of Mr. Milam's vehicle.  Apel stated that he observed the two occupants making furtive movements prior to parking his vehicle.  Officer Apel approached Mr. Milam's vehicle and ultimately detained Mr. Milam as the officer claimed to observe Mr. Milam with his pants down, and he believed foul play between Milam and the female passenger.

On cross exam, Apel admitted to testifying in June of 2015 in state court at a preliminary hearing.  During his testimony, Officer Apel described his encounter with Mr. Milam in a concise, step by step manner.  There was nothing vague about his testimony.  There was nothing tricky or confusing about the question by the state prosecutor.

> Q.  Will you spell your name for the court?
> Q.  Apel.
> Q.  Where are you employed?
> A.  Memphis Police Department Mt. Moriah Station Task Force.
> Q.  Were you so employed on January 21st of this year?
> A.  Yes I was.
> Q.  Did you were you on patrol that evening?
> A.. Yes, I was.
> Q.  Did you notice something out of the ordinary?
> A.  Yes.
> Q.  Can you describe that for the court please?
> A.  I was on routine patrol Ward 325 East Prescient and was checking behind Knight Road Elementary behind there I noticed around 7:20 pm a black Tahoe backed in a parking spot ***I went up to investigate the vehicle I shined my spotlight inside and I saw defendant Milam and a little girl in the front seat <u>as I was exiting my squad car I noticed that they were wiggling around it looked to me like they were trying to pull their pants up</u>*** and at that time I approached the driver as I was talking to the driver asking him

4

what he was doing I was noticing the little girl was buckling her
belt and at that time I asked the defendant to step out of the vehicle
I then noticed that he only had his pants sitting around his private
area his buttocks was still exposed as I cuffed him I helped him
pull his pants completely up and set him in the back of my squad
car I then called for a supervisor to meet me on the scene and a
couple of extra officers and the Lieutenant that made the scene
contacted the appropriate bureaus.

As this Court can easily see, according to Apel's sworn testimony, he clearly observed the

suspicious behavior(wiggling around), as he was getting out his car, meaning he had to have already

blocked Milam's egress.  Judge Claxto did not credit this testimony and the defendant therefore

objects.

In its post hearing memorandum, the government cited a latter portion of the transcript given

by Apel on cross examination to demonstrate that Apel contradicted his testimony on direct and

Judge Claxton credited this testimony in her Report and Recommendation.  However, Judge Claxton

somehow discounted the testimony given earlier on direct at 7:00 minute mark of the audio that

clearly demonstrates that Apel cut off(or blocked in) Milam previously to even shining the spotlight

into Milam's vehicle.

Q.  So you're facing the vehicle it's about you say 15 yards away now
are you, you said the vehicle was backed in and where your car was
are you near the front near the door?
A.  The vehicle was facing west bound towards the field and the rear
of the school I was also driving west bound as soon as I passed the
last portable I looked to my left which is about 15 yards away that's
where his car was and I was to the north of him I then turned south
and cut his vehicle off and shinned my light in there.
Q.  Is there any artificial lighting back there behind the school?
A.  No just regular street lamps lights on the school.
Q.  Do you remember if the windows on the vehicle were tinted or
not tinted?
A.   The side windows I can't recall the front windshield where I
shined the spotlight was not.
Q.  So when you immediately pulled in front of the vehicle do you

5

turn on your blue lights or do you just activate the flashlight?
A. I just activated the spotlight at that point.
Q. The spotlight?
A. Yep.
Q. And you're in front of directly in front of the vehicle?
A. Yes directly in front.
Q. You shined the light in and then what?
A. At that point I see the defendant here and the little girl appear to be pulling up their pants they were doing a wiggling motion which was indicative of them pulling up their pants and at that point I exited the vehicle.
Q. Did Mr Milam have on his shirt or
A. Yes he had his shirt on.

Mr. Milam was absolutely blocked in to his spot prior to Apel observing anything illegal, amounting to a Fourth Amendment violation, as the law below demonstrates. Judge Claxton credited Apel's explanation that he was still in motion when he observed the wiggling around of Mr. Milam and the female passenger. However, the statements given at the preliminary hearing were given closer in time to the incident, and the defendant objects to these findings of fact and asks this Court for a *de novo* hearing to assess the all of the officer's statements

## MEMORANDUM OF LAW AND ARGUMENT

### I. Initial seizure and detention

The stop and search of the defendant was illegal and therefore the fruits gathered thereafter must be suppressed as a matter of law. In warrantless searches, the prosecution bears the burden of justifying the warrantless search. (Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed. 59, 64 (1951). Except where it is alleged that the defendant consented to the search, the prosecution must satisfy this burden of proof by a preponderance of the evidence. (United States v. Matlock, 415 U.S. 164, 39 L.Ed.2d 242, 253; United States v. Finefrock, 668 F.2d 1168, 1170.

6

The United States Supreme Court has specified that a warrantless search must be based on *individualized* suspicion. Chandler v. Miller (1997), 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513. A citizen may not be detained even "momentarily" without reasonable suspicion. United States v. Buchanon, *supra*, 72 F.3d at 1225-26. Once the point of detention is reached an officer "must have a reasonable articulable suspicion [of criminal activity], or else the stop and detention are illegal." United States v. Garcia, 866 F.2d 147, 150 (6th Cir. 1989). In order to conduct a Terry stop and search of defendant, the officers could only consider appellant's actions and the circumstances surrounding him alone. Id. See, also, United States v. Patterson, 340 F.3d 368, 372 (6th Cir., 2003). An investigative stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." The totality of the circumstances must give the "detaining officers ... a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690 (1981). Cortez, quoting Chief Justice Warren's in Terry v. Ohio, *supra*, said that "[t]his demand for specificity in the information upon which police action is predicated is the *central teaching of this Court's Fourth Amendment's jurisprudence." Id. (emphasis in* Cortez*)*. *See also* United States v. Clardy, 819 F.2d 670, 673 (6th Cir. 1987).

The facts of the case at hand are controlled by Sixth Circuit precedent. The officer's own step by step description taken from direct examination in state court indicates that the officer blocked in Mr. Milam's vehicle and "was exiting his car" prior to witnessing anything illegal. This was a very specific, concise and detailed step by step description of the events of the night he arrested Mr. Milam. This testimony was given 8 months closer in time than that given at the suppression hearing before this Court. As such, there is absolutely no reason to distrust its accuracy. The Magistrate held

that the officer's statements on cross examination contradicts his own words that he observed the wiggling around before exiting his vehicle but clearly on cross examination, he was not giving a step by step description of the events that transpired.  However, on cross examination, Apel certainly made clear that prior to observing anything illegal, he cut off or blocked in Milam prior to observing anything illegal.  Under these facts, the officer's actions amounted to a warrantless Terry seizure without reasonable suspicion.  United States v. See, 574 F.3d 309, 313 (6th Cir.2009).  In See, as in the case at hand, an officer on patrol in a public parking lot noticed a car that was backed into a parking space in a dimly lit area. Id. at 311.  The officer in See, as in this case then pulled his patrol car in front of See's car and parked so that See could not move his vehicle. Id. at 312.  The Sixth Circuit held that "the blocking of See's car to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless Terry seizure ... [because] a reasonable person in See's position would not have felt free to leave." Id. at 313.  For these reasons, the defendant requests the same relief granted in See, as Apel's actions here were identical.

In the case at hand, the officer acted on a hunch that criminal activity was afoot prior to blocking in Mr. Milam, and the fruits from the initial stop must be suppressed.  See Wong Sun v. United States, 371 U.S. 471, 484–485, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963).  Also see, e.g., United States v. Gross, 662 F.3d 393, 401–07 (6th Cir.2011).

Gross is another example standing on all fours with the case at hand.  In Gross, the defendant moved to suppress evidence because he was unlawfully detained after police officers blocked him in and approached the vehicle to ask questions. Id. The Sixth Circuit found that there was an insufficient justification for the Terry stop. Id. at 401. The Sixth Circuit also concluded that the evidence, a firearm, should have been suppressed as a fruit of the unlawful seizure. Id. at 406. The

8

Court stated, , "where there is a stop with no legal purpose, the discovery of a warrant during that stop may be a relevant factor in the intervening circumstance analysis, but it is not by itself dispositive." Id. at 404. "To hold otherwise," the court reasoned,

> would create a rule that potentially allows for a new form of police investigation, whereby an officer patrolling a high crime area may, without consequence, illegally stop a group of residents where he has a "police hunch" that the residents may: 1) have outstanding warrants; or 2) be engaged in some activity that does not rise to a level of reasonable suspicion. Despite a lack of reasonable suspicion, a well-established constitutional requirement, the officer may then seize those individuals, ask for their identifying information (which the individuals will feel coerced into giving as they will have been seized and will not feel free to leave or end the encounter), run their names through a warrant database, and then proceed to arrest and search those individuals for whom a warrant appears. Under this scenario, an officer need no longer have reasonable suspicion o[r] probable cause, the very crux of our Fourth Amendment jurisprudence.

Id. at 404–05.

The defendant concedes that if this Court finds that the officer observed the illegal activity prior to blocking in Mr. Milam, there would be no Fourth Amendment issue.  Yet Judge Claxton seems to say in *dicta*, that even if Milam was blocked in without Apel observing illegal activity, that the exclusionary rule would not be implicated.  The defendant simply states that this legal conclusion is false, as the Sixth Circuit has repeatedly excluded evidence in similar cases cited above.

For all these reasons, the defendant requests that this Court not adopt the Report and Recommendation and instead suppresses all evidence seized pursuant to Mr. Milam's illegal seizure.

WHEREFORE, PREMISES CONSIDERED, the Defendant moves this Honorable Court to suppress all evidence and any alleged statements made by Defendant as a result of the illegal seizure, illegal arrest and warrantless search of the vehicle.

Respectfully Submitted,

STEPHEN B. SHANKMAN
FEDERAL DEFENDER

/s/ Needum L. Germany
Assistant Federal Defender
200 Jefferson Ave., Suite 200
Memphis, TN 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

I, David M. Bell, certify that a true copy of the foregoing Objections to Magistrate Court's

Report and Recommendation was forwarded via the Court's electronic filing system to Ms. Deb

Ireland, Assistant United States Attorney, 167 North Main, Suite 800, Memphis, Tennessee, 38103.

This, the 25th day of March, 2016.

/s/ Needum L. Germany
Assistant Federal Defender