# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 15-cr-20091 |
| ) | |
| TERRENCE MILAM, ) | |
| ) | |
| Defendant. ) | |

## ORDER

On January 26, 2016, Defendant Terrence Milam filed a Motion to Suppress. (Motion to Suppress, ECF No. 36.) The government responded in opposition to the Motion to Suppress on February 5, 2016. (Response, ECF No. 37.) On February 29, 2016, the Magistrate Judge held a suppression hearing (the "Suppression Hearing"). (R&R, ECF No. 49 at 1.) The government filed a post-hearing brief on March 4, 2016. (Gov. Post-Hearing Brief, ECF No. 47.) Milam filed a post-hearing brief on March 7, 2016. (Milam Post-Hearing Brief, ECF No. 48.)

Before the Court is the Magistrate Judge's March 18, 2016 Report and Recommendation recommending denial of the Motion to Suppress (the "R&R"). (R&R, ECF No. 49.) On March 25, 2016, Milam filed objections to the R&R and requested a de novo suppression hearing (the "Objections"). (Obj., ECF No. 50.)

The government responded on April 15, 2016. (Response to Obj., ECF No. 55.)

For the following reasons, the request for a de novo suppression hearing is DENIED, the Objections are OVERRULED, the R&R is ADOPTED, and the Motion to Suppress is DENIED.

I. **Background**

The R&R sets forth the factual and procedural background of this case in detail. (R&R, ECF No. 49.) Unless otherwise stated, the Court adopts the R&R's defined terms. The following facts are pertinent to the Objections and were not set forth in the R&R.

At the Suppression Hearing, Officer Zachary Apel testified that on January 21, 2015, he first developed reasonable suspicion that Milam was engaged in illegal activity when he saw Milam and the victim "wiggling" to pull their pants up in Milam's car. (Hearing Tr., ECF No. 46 at 20-21,31.) He testified that he first saw them wiggling while he was driving toward Milam's car and before blocking Milam in Milam's parking space. (Id. at 20-21,31,37.) Defense counsel requested that an audio recording of Officer Apel's testimony from the June 5, 2015 preliminary hearing in state court (the "Preliminary Hearing") be played in open court to impeach Officer Apel about when he first developed reasonable suspicion that Milam was engaged in illegal activity. (Id. at 22-23.) Defense counsel

said he was not moving to admit the audio recording into evidence. (Id. at 26.) The government objected to defense counsel's playing the recording for purposes of impeachment. (Id. at 22-23,25.) The Magistrate Judge denied the request to play the audio recording. (Id. at 26-27.) She allowed Officer Apel to listen to the recording alone to see if it would refresh his recollection. (Id.)

The audio recording refreshed Officer Apel's recollection. (Id. at 28.) Officer Apel's testimony at the Preliminary Hearing was that he saw Milam and the victim wiggling in Milam's car as Officer Apel exited his police car, which occurred after Milam's car had been blocked. Officer Apel explained that he did not testify at the Preliminary Hearing about first seeing Milam and the victim wiggling in Milam's car before blocking the car because he was asked to give a "vague statement" instead of a "more detailed description". (Id. at 29.) He said "I believe if I had been asked a little differently, I may have said it that way." (Id. at 31.)

Based on Officer Apel's belief that he was asked about the incident in a different way at the Preliminary Hearing than at the Suppression Hearing, defense counsel again asked the Magistrate Judge to play the audio recording. (Id. at 32.) Defense counsel sought to show that the question Officer Apel had been asked at the Preliminary Hearing was not sufficiently

different to justify inconsistencies in Officer Apel's testimony about when he first saw Milam and the victim wiggling in Milam's car. The government objected to admitting the recording into evidence. (Id.) The following exchange occurred between defense counsel, the government, and the Magistrate Judge:

> Mr. Germany [defense counsel]: . . . I know how to impeach a witness and I just did.
>
> The Court: Hang on a second. And you are right, you did [impeach him]. In other words, you got him to admit the testimony was different.
>
> Mr. Germany: And I also got him to now say that, well, he's asked a little bit different way . . . .
>
> The Court: Hang on a second. The evidence is the testimony, not the question. What he said is: When asked last summer, what happened, he saw wiggling as he was getting out of the car. He's asked today to step by step by step go through it. And so, I mean, you went through it both ways with him. He doesn't disagree that he said then he saw the wiggling as he was getting out of the car.
>
> Mr. Germany: In order for you to have a full understanding of the gravity of his testimony, it is incumbent upon you that you listen to the preliminary hearing. If you don't want to listen to it or if you are not –
>
> The Court: No, again, it's not if I don't want to listen to it. It's –
>
> Mr. Germany: You are not –
>
> The Court: It's how – it's how we do impeach, right, and how you get it in front of me. And, I'm not going to – I've said it before, I'll say it again, I'll never catch up to ya'll in criminal procedure, but I know rules of evidence, too. I mean civil or criminal rules of evidence remain the same. And –

4

Mr. Germany: But the rules of evidence don't apply in a suppression hearing, Your Honor. And even if it did, Your Honor, I've been in situations in trial where courts have allowed the jury to hear preliminary hearing transcripts, much less –

The Court: I'm not saying there is anything wrong – you know what, I said it before, I'll say it again, play it, and it will be under the category of for what it's worth. I'll take it into – again, it's just in front of me. Your objection is on the record. It's duly noted.

Ms. Ireland [the government]: An additional objection, Your Honor, it does not become part of the transcript. The court reporter will not transcribe that hearing. It will not be part of the record. But if Your Honor is going to consider it, it needs to be. And, furthermore, there are other voices on that transcript that haven't been – or other voices on that recording that have not been identified or acknowledged, and there is ancillary material that is not pertinent to the suppression.

Mr. Germany: What ancillary material? What voices? The prosecutor? What ancillary material? He's testifying about the case.

The Court: There is a disk, right? Is there a disk of the hearing?

Mr. Germany: Pardon me?

The Court: Is there a disk of the recording?

Mr. Germany: There is.

The Court: Just make it available to me.

. . . .

Mr. Germany: There really isn't anything else, but what I would ask – what I would ask to be allowed to do is submit that into evidence, and if Your Honor wants to consider it and you do a report and recommendation, tell us in your report and recommendation that you considered what's on the disk

5

> or not . . . . want it noted for the record that I
> tried to get in the prior testimony of the officer,
> and based on everything that he has stated, based upon
> his lack of ability to rectify the two testimonies
> saying that both the questions were asked a different
> way trying to explain it away, well, I mean it would
> be helpful, I believe, for Your Honor to listen to it.
> If Your Honor does not want to listen to it or will
> not let me play the tape, I understand Your Honor's
> ruling. Just note my objection for the record.
>
> . . . .
>
> The Court: I want you to get me a disk and then tell
> me what time on the disk is the beginning and end of
> what you want me to listen to . . . . I'll make a note
> in my report and recommendation how I treat it and
> what rules I treat it under or don't treat it under.

(Id. at 32-35, 44-45.)

The audio recording was not admitted into evidence. It was admitted for identification purposes only. (Exh. & Witness List, ECF No. 45.) The Magistrate Judge requested post-hearing briefs on the admissibility of the audio recording. (Hearing Tr., ECF No. 46 at 47.) In Milam's post-hearing brief, he informed the Magistrate Judge that the part he wanted her to listen to was from 1:50 to 3:00 on the disk. (Milam Post-Hearing Brief, ECF No. 48 at 2.) He argued that the entire audio recording should be admitted into evidence because the Federal Rules of Evidence do not apply at suppression hearings. (Id.) The government argued that the audio recording should not be admitted into evidence because it is not inconsistent with Officer Apel's Suppression Hearing testimony. (Gov. Post-

6

Hearing Brief, ECF No. 47 at 2.) The government "acknowledge[d]" that the entire recording might be helpful to the Magistrate Judge in deciding whether Officer Apel's statements were inconsistent. (Id. at 3.) Each party cited to the audio recording in support of its position on whether a Fourth Amendment violation had occurred.

The R&R recommends that the Motion to Suppress be denied because Officer Apel developed the reasonable suspicion required by the Fourth Amendment to detain Milam before blocking Milam's car in its parking space. (R&R, ECF No. 49 at 6.) Even if Officer Apel violated Milam's Fourth Amendment right, the R&R recommends that the violation does not "rise[] to a level to warrant suppression of evidence." (Id. at 7.) The R&R's factual findings and conclusions of law are based in part on the audio recording of Officer Apel's Preliminary Hearing testimony. (R&R, ECF No. 49.) The R&R does not address the admissibility of the audio recording.

## II. Standard of Review

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to Magistrate Judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). If the

Magistrate Judge holds a suppression hearing, the district court may reopen the proceeding. United States v. Stennis, 457 F. App'x 494, 502 (6th Cir. 2012). The district court should be "extremely reluctant to do so." Id. (internal quotation marks omitted). "A ruling on whether to reopen a suppression hearing is governed by principles of jurisprudence that relate to reopening proceedings, generally." United States v. Carter, 374 F.3d 399, 405 (6th Cir. 2004), judgement vacated on other grounds, 543 U.S. 1111 (2005). In deciding whether to reopen a suppression hearing, "the district court should account for the timeliness of the motion, the character of the proposed testimony, the effect of granting the motion, and, most importantly, whether the opposing party will be prejudiced by reopening the record." United States v. Holland, 522 F. App'x 265, 270 (6th Cir. 2013). "[B]efore the court considers any of these elements, the moving party must offer a good reason for not previously presenting the proposed proof." Id. The explanation must be "reasonable and adequate." Id. The court need not reopen the proceeding if the new evidence the moving party wishes to present would not change the court's ruling on the motion to suppress. United States v. Baker, 562 F. App'x 447, 451 (6th Cir. 2014). Courts apply the same standard when the moving party requests a de novo hearing. United States v. Stokely, 733 F. Supp. 2d 868, 879 (E.D. Tenn. 2010).

After the Magistrate Judge issues a report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. Id. The district court is not required to review—under a de novo or any other standard—"any issue that is not the subject of an objection." Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed. Id. at 151.

**III. Analysis**

**A. De Novo Hearing**

Milam requests a de novo suppression hearing. (Obj., ECF No. 50 at 3.) He argues that the Magistrate Judge improperly excluded the audio recording from evidence. (Id. at 2-3.) He argues that a de novo hearing is necessary because the Magistrate Judge never ruled on the admissibility of the audio recording in the R&R "although she did refer to portions of it" and a new hearing would allow defense counsel to "properly question Officer Apel regarding the entirety of the audio." (Id. at 3.) Milam argues that admitting the audio recording

9

into evidence and allowing Milam to ask Officer Apel more questions about the Preliminary Hearing would help the Court assess Officer Apel's credibility. (Id.) The government argues that, although the Federal Rules of Evidence do not apply at suppression hearings, the Magistrate Judge can limit evidence as necessary. (Response to Obj., ECF No. 55 at 5-6.) It argues that the issue is immaterial because even if the two testimonies were inconsistent, "the testimony least favorable to the government is still insufficient to justify suppression". (Id. at 6.) The government does not object to the Magistrate Judge's reliance on Officer Apel's Preliminary Hearing testimony in the R&R.

Milam has a reasonable and adequate explanation for not playing the audio recording in open court or having it admitted into evidence: the Magistrate Judge forbade it. Although Milam's motion was timely, Officer Apel's credibility is material to the Motion to Suppress, and the government has not argued that it would be prejudiced by a de novo hearing, Milam has not shown that a de novo hearing would change the Court's ruling on the Motion to Suppress. Defense counsel was given the opportunity to question Officer Apel about his Preliminary Hearing testimony. Officer Apel admitted that his testimony was different, and the Magistrate Judge agreed that Officer Apel had been impeached. The Magistrate Judge listened to Officer Apel's

Preliminary Hearing testimony and took it into consideration as Milam requested. The Magistrate Judge's recommendations were based, in part, on her finding that Officer Apel's Suppression Hearing testimony was credible and consistent with his Preliminary Hearing testimony. She found that he clarified any discrepancies between his testimonies. As discussed below, the Court has no reason to question that credibility determination. Milam has not shown how additional questions about the Preliminary Hearing testimony would have diminished Officer Apel's credibility. Baker, 562 F. App'x at 451 (affirming the district court's decision not to reopen a suppression hearing because it was implausible that the new evidence would have changed the court's credibility determination about a witness). Milam's request for a de novo suppression hearing is DENIED.

**B. Objections to Factual Findings**

Milam objects to the factual finding that Officer Apel observed Milam and the victim wiggling in Milam's car as if they were engaged in illegal activity before blocking Milam's car. (Obj., ECF No. 50 at 5.) Milam argues that Officer Apel's Preliminary Hearing testimony is inconsistent with that finding and that the Magistrate Judge erred by not crediting the prior testimony. (Id.) Milam argues that Officer Apel's Preliminary Hearing testimony "clearly demonstrates that Apel cut off (or blocked in) Milam previously to even shining the spotlight into

11

Milam's vehicle." (Id.) He argues that Officer Apel did not observe any suspicious behavior until he was parked in front of Milam's car and exiting the officer's vehicle. (Id. at 7.) Milam argues that Officer Apel's testimony from the Preliminary Hearing should be credited more than his testimony at the Suppression Hearing because the prior testimony was closer to the events. (Id.)

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Johnson, No. 10-20176, 2011 WL 3844194 at *2 (W.D. Tenn. Aug. 30, 2011) (citing United States v. Raddatz, 447 U.S. 667, 675-76 (1980))(citations omitted). "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." Id. (citing United States v. Robinson, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)) (citations omitted). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de

novo review of the record he finds a reason to question the magistrate judge's assessment." Id. (citations omitted).

The finding about when Officer Apel had reasonable suspicion that Milam was engaged in illegal activity depends on Officer Apel's credibility. (Hearing Tr., ECF No. 46 at 43.) The Magistrate Judge found Officer Apel's Suppression Hearing testimony credible, even after agreeing that defense counsel had impeached Officer Apel. (Hearing Trans., ECF No. 46 at 32.) She compared Officer Apel's Preliminary Hearing testimony and his Suppression Hearing testimony in the R&R. (R&R, ECF No. 49 at 6.) She concluded that Officer Apel had "clarified" any discrepancies between his testimonies by explaining that he saw Milam and the victim struggling to pull their pants up both before he parked his car in front of Milam's car and afterward. (Id.) Officer Apel had not testified about seeing Milam and the victim wiggling around as Officer Apel was driving because his story did not need to be as detailed during the Preliminary Hearing. The Suppression Hearing was the first time he was asked to pinpoint when he first developed reasonable suspicion. The Magistrate Judge acknowledged this at the Suppression Hearing:

> The Court: Hang on a second. The evidence is the testimony, not the question. What he said is: When asked last summer, what happened, he saw wiggling as he was getting out of the car. He's asked today to step by step by step go through it. And so, I mean,

13

you went through it both ways with him.  He doesn't
disagree that he said then he saw the wiggling as he
was getting out of the car.

(Hearing Tr., ECF No. 46 at 32.)

There is no reason to question the Magistrate Judge's credibility determination.  Officer Apel testified multiple times that he developed a reasonable suspicion that Milam and the victim were engaged in illegal activity before blocking Milam's car:

> Q. Is it fair to say that you stopped the vehicle, and as you were exiting the car, that's when you noticed the jostling around?
>
> A. No, I pulled up with my spotlight on.  I saw the individuals struggling to get their pants, pull their pants up, and at that point, I stopped the car, put it in park and got out.
>
> . . . .
>
> A. As I was coming to the front of the vehicle, I had my spotlight on it, I saw the struggle.  At that point I stopped my vehicle and got out and approached them.
>
> . . . .
>
> A. When I saw the wiggling around, as soon as I put the spotlight on the vehicle, I was still in motion, and then they were wiggling.  When I stopped, they were wiggling.  When I got out, they were wiggling. When I opened the door to the driver's side, they were wiggling.
>
> . . . .
>
> A. Like I said, I saw the jostling around when I was pulling up, when I put the vehicle in park, when I got out and when I opened the driver's side door.

(Id. at 20-21,31,37.)

Officer Apel admitted that he "believe[d] [he] stated it differently" at the Preliminary Hearing. (Id. at 37.) He testified that if his version of events was different at the Preliminary Hearing, it was because he "vaguely gave a recountment of what happened that night." (Id. at 31-32.) He testified that "[u]sually when you have to testify in general sessions, you give a vague statement of what you did." (Id. at 38.) He testified that he was giving more detail at the Suppression Hearing because he was "being asked to give more detail." (Id.) The Magistrate Judge was in a better position to judge the demeanor of Officer Apel as defense counsel impeached him. She listened to the recording of the Preliminary Hearing. The Court does not have reason to believe that additional questions about the Preliminary Hearing or the opportunity to play the recording in open court would have changed the Magistrate Judge's credibility determination.

Absent a reason to question the Magistrate Judge's credibility determination, the Court OVERRULES Milam's objection and ADOPTS the Magistrate Judge's finding that Officer Apel had reasonable suspicion that Milam and the victim were engaged in illegal activity before blocking Milam's car.

### C. Objections to Conclusions of Law

Milam objects to the conclusion that Officer Apel had the reasonable suspicion required by the Fourth Amendment to detain him temporarily. (Obj., ECF No. 50 at 8.) Milam concedes that if the Court finds Officer Apel had reasonable suspicion that Milam and the victim were engaged in illegal activity before blocking in Milam's car, there is no Fourth Amendment violation. (Id. at 9.) Because the Court has made that finding, Milam concedes that there is no Fourth Amendment violation. Milam's objection is OVERRULED and the Magistrate Judge's conclusion that Officer Apel did not violate Milam's Fourth Amendment rights is ADOPTED.

### IV. Conclusion

For the foregoing reasons, the request for a de novo suppression hearing is DENIED, the Objections are OVERRULED, the R&R is ADOPTED, and the Motion to Suppress is DENIED.

So ordered this 1st day of June, 2016.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE